## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN, BANKRUPTCY DIVISION

---------------------------------------------------------x

In re:                                            :
                                                  :         **Chapter 11**
**INNOVATIVE COMMUNICATION**                      :         **Case No. 06-30008 (JKF)**
    **COMPANY, LLC, a Delaware LLC,**            :
                                                  :
        **Debtor.**                      :         Objection Deadline:  To Be Determined
                                                  :         Hearing Date:  To Be Determined

---------------------------------------------------------x

In re:                                            :
                                                  :         **Chapter 11**
**EMERGING COMMUNICATIONS,**                      :         **Case No. 06-30007 (JKF)**
    **INC., a Delaware corporation,**             :
                                                  :
        **Debtor.**                      :         Objection Deadline:  To Be Determined
                                                  :         Hearing Date:  To Be Determined

---------------------------------------------------------x

                                                  :
                                                  :         **Chapter 11**
**JEFFREY J. PROSSER,**                           :         **Case No. 06-30009 (JKF)**
                                                  :
        **Debtor.**                      :         Objection Deadline:  To Be Determined
                                                  :         Hearing Date:  To Be Determined

---------------------------------------------------------x

## DEBTORS' JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

SHEARMAN & STERLING LLP
Douglas P. Bartner, Esq.
Scott C. Shelley, Esq.
Lynette C. Kelly, Esq.
599 Lexington Avenue
New York, New York  10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi (DE No. 2732)
Jason M. Madron (DE No. 4431)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

DUDLEY CLARK & CHAN, L.L.P.
   Carol Ann Rich
720 Estate Thomas
Havensight
St. Thomas, Virgin Islands 00802
Telephone:  (340) 776-7474
Facsimile:  (340) 776-8044

SHULMAN ROGERS GANDAL PORDY &
ECKER, P.A.
Michael J. Lichtenstein
11921 Rockville Pike, Rockville, MD 20852
Telephone:  (301) 230-5231
Facsimile:  (301) 230-2891

ROBERT F. CRAIG, PC
Robert F. Craig
Jenna B. Taub
1321 Jones Street, Omaha, NE 68102
Telephone:  (402) 408-6000
Facsimile:  (402) 408-6001

THOMAS ALKON, P.C.
Thomas Alkon
2115 Queen Street,
Christiansted, St. Croix, USVI  00820
Telephone:  (340) 773-3305
Facsimile:  (340) 773-4491

- and -

PHILLIPS, GOLDMAN & SPENCE
Lisa C. McLaughlin
1200 N. Broom St., Wilmington, DE  19806
Telephone:  (302) 655-4200
Facsimile:  (302) 655-4210

Dated: January 8, 2007

CO-COUNSEL FOR THE DEBTORS AND
DEBTORS IN POSSESSION

## **TABLE OF CONTENTS**

Page

ARTICLE I

DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

Section 1.1. Defined Terms ................................................................................................................1
Section 1.2. Rules of Interpretation and Computation of Time ........................................................5

ARTICLE II

ADMINISTRATIVE AND PRIORITY TAX CLAIMS

Section 2.1. Administrative Claims ...................................................................................................6
Section 2.2. Priority Tax Claims........................................................................................................6
Section 2.3. Professional Fees ...........................................................................................................6

ARTICLE III

CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

Section 3.1. Substantive Consolidation and Treatment of Intercompany Claims..............................7
A.  Substantive Consolidation ...........................................................................................................7
B.  Cancellation of Intercompany Claims..........................................................................................7
Section 3.2. Classification of Claims and Equity Interests. .............................................................7
Section 3.3. Treatment of Claims and Equity Interests.....................................................................7
Section 3.4. Miscellaneous ..............................................................................................................10

ARTICLE IV

CRAM DOWN

ARTICLE V

MEANS FOR IMPLEMENTATION OF THE PLAN

Section 5.1. Operation of Business and Management of Assets After Effective Date. .....................10
Section 5.2. The Responsible Officer ..............................................................................................10
Section 5.3. Refinancing and Sale Transactions .............................................................................11
Section 5.4. Intercompany Claims...................................................................................................11
Section 5.5. Continued Corporate Existence and Vesting of Assets in Debtors ..............................11
Section 5.6. Retention of Debtors' Equity Interests.........................................................................11
Section 5.7. Execution of Related Documents.................................................................................11
Section 5.8. Corporate Governance, Directors and Officers, and Corporate Action ........................12
Section 5.9. Elimination of Classes .................................................................................................12

ARTICLE VI

TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 6.1. Assumption of Executory Contracts and Unexpired Leases .........................................12
Section 6.2. Claims Based on Rejection of Executory Contracts or Unexpired Leases ....................12
Section 6.3. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.................13
Section 6.4. Indemnification of Directors, Officers and Employees ...............................................13

ARTICLE VII

PROVISIONS GOVERNING DISTRIBUTIONS

Section 7.1. Distribution for Claims and Equity Interests Allowed as of the Effective Date .............................. 13
Section 7.2. Delivery and Distributions and Undeliverable or Unclaimed Distributions .................................... 13
Section 7.3. Timing and Calculation of Amounts to Be Distributed ................................................................ 14
Section 7.4. Setoffs and Recoupments.......................................................................................................... 14
Section 7.5. Manner of Payment Under Plan of Reorganization ...................................................................... 14

ARTICLE VIII

PROCEDURES FOR RESOLVING DISPUTED CLAIMS

Section 8.1. Prosecution of Objections to Claims........................................................................................... 15
Section 8.2. Payments and Distributions on Disputed Claims ........................................................................ 15

ARTICLE IX

CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF THE PLAN

Section 9.1. Conditions Precedent to Confirmation......................................................................................... 15
Section 9.2. Conditions Precedent to Occurrence of the Effective Date........................................................... 15
Section 9.3. Waiver of Conditions................................................................................................................. 16
Section 9.4. Effect of Non-Occurrence of Effective Date Conditions ............................................................. 16
Section 9.5. Substantial Consummation of Plan ............................................................................................ 16

ARTICLE X

RELEASE, INJUNCTIVE AND RELATED PROVISIONS

Section 10.1. Subordination........................................................................................................................... 16
Section 10.2. Releases ................................................................................................................................... 17
Section 10.3. Preservation of Rights of Action................................................................................................ 17
Section 10.4. Exculpation.............................................................................................................................. 18
Section 10.5. Injunction................................................................................................................................. 18

ARTICLE XI

RETENTION OF JURISDICTION

ARTICLE XII

MISCELLANEOUS PROVISIONS

Section 12.1. Payment of Statutory Fees ........................................................................................................ 20
Section 12.2. Discharge of Debtors ................................................................................................................ 20
Section 12.3. Modification of Plan ................................................................................................................. 20
Section 12.4. Revocation of Plan ................................................................................................................... 21
Section 12.5. Successors and Assigns ............................................................................................................ 21
Section 12.6. Reservation of Rights................................................................................................................ 21
Section 12.7. Section 1145 Exemption ........................................................................................................... 21
Section 12.8. Headings .................................................................................................................................. 21
Section 12.9. Governing Law ......................................................................................................................... 21
Section 12.10. Severability ............................................................................................................................ 21
Section 12.11. Implementation ....................................................................................................................... 22
Section 12.12. Inconsistency .......................................................................................................................... 22
Section 12.13. Further Assurances ................................................................................................................. 22

Section 12.14. Service of Documents ........................................................................................................ 22

Section 12.15. Exemption from Certain Transfer Taxes ........................................................................... 22

Section 12.16. Compromise of Controversies .......................................................................................... 23

Section 12.17. No Admissions .................................................................................................................. 23

Section 12.18. Filing of Additional Documents ....................................................................................... 23

Section 12.19. Allocation of Payments .................................................................................................... 23

DEBTORS' JOINT PLAN OF REORGANIZATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE


Innovative Communication Company, LLC ("ICC-LLC") Emerging Communications, Inc. ("Emerging"), and Jeffrey J. Prosser, as debtors and debtors in possession in the above-captioned cases, hereby respectfully propose the following Joint Plan of Reorganization under chapter 11 of the Bankruptcy Code.  The only Entities entitled to vote on the Plan are the holders of claims in Class 3, Class 5 and Class 6, and such Entities are encouraged to read the Plan and the related Disclosure Statement and their respective exhibits in their entirety before voting to accept or reject the Plan.  No materials other than the Plan, the Disclosure Statement and their respective exhibits and schedules, if any, attached thereto or referenced therein have been authorized by the Debtors for use in soliciting acceptances or rejections of the Plan.


**ARTICLE I**

**DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME**

Section 1.1. *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

"Administrative Claim" means a Claim for costs and expenses of administration under section 503(b)(1) or 507(b) of the Bankruptcy Code, including for:  (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) compensation for services and reimbursement of expenses under section 330(a) or 331 of the Bankruptcy Code and other Professional Fees; (c) any indebtedness or obligations, incurred by or assumed by the Debtors during the Chapter 11 Cases; and (d) all fees and charges assessed against the Estates under 28 U.S.C. §§ 1911-1930.

"Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

"Allowed" (a) when used with respect to any Claim, means any Claim or portion thereof against any Debtor, (i) proof of which was filed within the applicable period of limitation, if any, fixed by the Bankruptcy Court in accordance with Bankruptcy Rule 3003(c)(3) as to which (A) no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, (B) any objection has been settled, waived, withdrawn or denied by a Final Order or (C) if an objection has been interposed, such Claim as has been allowed (whether in whole or in part) by a Final Order, (ii) which, if no proof of claim was so filed, has been listed by a Debtor in its Schedules, if any, as liquidated in an amount and not disputed or contingent and as to which (A) no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, (B) any objection has been settled, waived, withdrawn or denied by a Final Order or (C) if an objection has been interposed, such Claim as has been allowed (whether in whole or in part) by a Final Order, (iii) which Claim arises from the recovery of property under section 550 or 553 of the Bankruptcy Code and is allowed in accordance with section 502(h) of the Bankruptcy Code, (iv) which Claim is expressly allowed under the Plan, (v) which Claim is allowed by a Final Order or (vi) which Claim is not otherwise objected to or disputed; *provided, however,* that with reference to any Claim, the term "Allowed" for purposes of distribution under the Plan shall not include, unless otherwise specified in the Plan, interest on such Claim from and after the Petition Date; and (b) when used with respect to any Equity Interest, means any issued and outstanding ICC-LLC Equity Interest as reflected in the ICC-LLC stock transfer ledger as of the Distribution Record Date.

"Bank of America" means Bank of America, N.A., a secured creditor of Prosser.

"Bankruptcy Code" means title 11 of the United States Code as amended from time to time.

"Bankruptcy Court" means the United States District Court for the District of the Virgin Islands, Division of St. Thomas and St. John, Bankruptcy Division, or any successor court having jurisdiction over the Debtors' Chapter 11 Cases.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the General Orders or local rules of the Bankruptcy Court, as amended from time to time.

"Business Day" means any day, other than a Saturday, Sunday or a "legal holiday", as defined in Bankruptcy Rule 9006(a).

"Cash" means lawful currency of the United States of America.

"Causes of Action" means all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, rights to legal remedies, rights to equitable remedies, rights to payment and claims, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances or trespasses whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise.

"Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

"Claim" means a claim as defined in section 101(5) of the Bankruptcy Code against any of the Debtors, whether or not asserted.

"Class" means a class of Claims or Equity Interests as set forth in Article III of the Plan.

"Confirmation" means the confirmation of the Plan by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code.

"Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing to consider Confirmation of this Plan held pursuant to section 1128 of the Bankruptcy Code.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code in form and substance satisfactory to the Debtors.

"D&O Releasees" means all officers, directors, employees, attorneys, financial advisors, accountants, investment bankers, agents and representatives of the Debtors and their affiliates who served in such capacity as of the Petition Date, in each case in their capacity as such.

"Damages" has the meaning set forth in Section 10.4 hereof.

"Debtors" means, collectively, ICC-LLC, Emerging and Prosser, as debtors and debtors in possession in the Chapter 11 Cases.

"Debtor Equity Interests" means, collectively, ICC-LLC's Equity Interests and Emerging's Equity Interests.

"Designated Sale Assets" means (i) the Debtors' business operations in Martinique and Guadaloupe, and (ii) Valvision.

"Disallowed" means, when used with respect to any Claim, a Claim that has been disallowed, in whole or in part, by a Final Order, or which has been withdrawn, in whole or in part, by the Holder thereof.

"Disclosure Statement" means that certain Disclosure Statement, filed on or before the date established by the Bankruptcy Court pursuant to Bankruptcy Rule 3016, as amended, supplemented or modified from time to time, relating to the Plan, including, without limitation, any exhibits and schedules thereto.

"Disputed" means, with respect to any Claim or a portion thereof, any Claim or portion thereof:  (a) that is listed on the Schedules as unliquidated, disputed or contingent; (b) as to which the Debtors or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation or dispute has not been settled, waived, withdrawn or determined by a Final Order; (c) during the period prior to the deadline fixed by the Plan or the Bankruptcy Court for objecting to such Claim, that exceeds the amount listed on the Schedules other than as unliquidated, disputed or contingent; or (d) that is neither Allowed nor Disallowed.

"Distribution Record Date" mean the close of business on the Confirmation Date.

"Effective Date" means the first Business Day on which all conditions specified in Article IX of the Plan have been satisfied or, if capable of being waived, have been waived in accordance with Section 9.3 hereof.

"Emerging" means Emerging Communications, Inc.

"Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

"Equity Interest" means, with respect to any Entity, any equity interest of or in such Entity including, but not limited to, all issued, unissued, authorized or outstanding shares, stock or other instruments evidencing an equity ownership interest in such Entity, including any Stock Rights with respect thereto and all claims subject to mandatory subordination pursuant to section 510(b) of the Bankruptcy Code.

"Estates" means the estates of the Debtors created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

"Exculpated Acts" has the meaning set forth in Section 10.4 hereof.

"Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which such order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review, rehearing or certiorari has expired and no appeal or petition for review, rehearing or certiorari has been timely taken, or as to which any appeal that has been taken or any petition for review, rehearing or certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which review, rehearing or certiorari was sought; provided that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

"General Unsecured Claim" means any Claim against any of the Debtors that is not an Administrative Claim, a Priority Tax Claim or a Priority Claim, including, without limitation, Claims arising from the rejection of an unexpired lease or executory contract pursuant to Article VI of the Plan or otherwise.

"Greenlight Claims" means the collective claims of Greenlight Capital Qualified, L.P., Greenlight Capital, L.P. and Greenlight Capital Offshore, Ltd.

"Holder" means the beneficial holder of a Claim or Equity Interest, as the context so provides.

"ICC-LLC" means Innovative Communication Company, LLC, a Delaware limited liability company.

"Impaired" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired under this Plan within the meaning of section 1124 of the Bankruptcy Code.

"Indemnified Parties" has the meaning set forth in Section 10.4 hereof.

"Intercompany Claim" means (a) any account reflecting intercompany book entries by one Debtor against the other Debtor and, (b) any Claim that is not reflected in such book entries and is held by one Debtor against the other Debtor.

"Lien" means a lien as defined in section 101(37) of the Bankruptcy Code against property of any of the Debtors.

"New ICC" means Innovative Communication Corporation, a U.S. Virgin Island corporation and a non-debtor affiliate of the Debtors.

"Operating Affiliate" means an Affiliate owned or controlled by a Debtor and engaged in ongoing business activities other than as a holding company.

"Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

"Petition Date" means July 31, 2006, the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

"Plan" means this Joint Plan of Reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order.

"Plan Completion Date" means that date on which all of the acts necessary for consummation of the provisions of this Plan have been completed.

"Plan Documents" means the agreements, documents and instruments to be entered into on or as of the Effective Date as contemplated by, and in furtherance of, the Plan, substantially in the forms contained in the exhibits to the Plan, and Disclosure Statement and Plan Supplement..

"Plan Supplement" means the compilation of documents and forms of documents and exhibits substantially in the forms filed with the Bankruptcy Court not less than five days prior to the Voting Deadline, as such documents and exhibits may be altered, amended, modified or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules.

"Postpetition Interest" means, with respect to any Claim, the amount of interest that has accrued following the Petition Date and is determined by Final Order to be owing, on account of such Claim.

"Priority Claims" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"Priority Tax Claim" means a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"Professional Fees" means all allowances of compensation and reimbursement of expenses allowed to (a) Professionals pursuant to section 330 or 331 of the Bankruptcy Code or (b) any Person making a claim for compensation under section 503(b) of the Bankruptcy Code.

"Professionals" means an Entity or Person employed pursuant to a Final Order in accordance with section 327, 328 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to section 327, 328, 329, 330 or 331 of the Bankruptcy Code.

"Prosser" means Jeffrey J. Prosser, one of the Debtors in these chapter 11 cases.

"Reinstated" or "Reinstatement" means (i) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (a) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (b) reinstating the maturity of such Claim as such maturity existed before such default, (c) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law and (d) not otherwise altering the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim.

"Responsible Officer" means the individual appointed by the Bankruptcy Court to assist in the disposition of the V.I. Telecommunications Assets and the Designated Sale Assets.

"Schedules" means the schedules, of assets and liabilities, schedules of executory contracts, and the statement of financial affairs of the Debtors filed pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended or supplemented from time to time.

"Secured Claim" means, with respect to any Debtor, a Claim that is secured by a Lien on, or security interest in, property of any such Debtor, or that has the benefit of any right of setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in such Debtor's interest in such property, or to the extent of the amount subject to setoff, which value shall be determined as provided in section 506 of the Bankruptcy Code.

"Settlement Agreement" means the Terms and Conditions of Settlement of Claims of RTFC, CFC, Prosser Parties, and Greenlight Entities, dated April 26, 2006, by and among the Rural Telephone Finance Cooperative, the National Rural Utilities Cooperative Finance Corporation, Prosser, ICC-LLC, Emerging, New ICC, Virgin Islands Telephone Company, Innovative Communications Corporation (a United States Virgin Islands corporation that was dissolved in December 1998), Greenlight Capital, L.P., Greenlight Capital Qualified, L.P. and Greenlight Capital Offshore, Ltd.

"Stock Rights" means: (a) conversion, exchange, voting, participation and dividend rights; (b) liquidation preferences; (c) options, warrants, calls, rights, puts, awards and commitments; (d) share-appreciation rights; (e) any other rights of a similar nature; and (f) any agreements granting any of the foregoing.

"Unimpaired" means a Claim that is not Impaired.

"Valvision" means Valvision Telecommunications, B.V., a Dutch company.

"V.I. Telecommunications Assets" means the telecommunications assets held by the Debtors and their subsidiaries in the Virgin Islands that the Debtors and their affiliates are engaged in the process of selling and/or refinancing.

"Voting Deadline" means the date by which ballots must be properly executed, completed and transmitted to the Debtors' solicitation agent in order to be counted as a vote to accept or reject the Plan, as may be extended by the Debtors from time to time.

Section 1.2. *Rules of Interpretation and Computation of Time*

(a)    For purposes of the Plan:  (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (ii) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on

such terms and conditions; (iii) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (iv) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (v) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (viii) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(b)      In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

Section 2.1. *Administrative Claims*

Subject to the provisions of sections 330(a), 331 and 503(b) of the Bankruptcy Code, each holder of an Allowed Administrative Claim shall receive on account thereof, Cash equal to the unpaid amount of such Allowed Administrative Claim, except to the extent that any holder of an Allowed Administrative Claim agrees to less favorable treatment (a) upon the later of the Effective Date or, if such Administrative Claim is Allowed after the Effective Date, the date upon which there is a Final Order allowing such Administrative Claim, (b) upon such other terms as may exist in the ordinary course of such Debtor's business and in accordance with the terms of any agreement governing or documents evidencing such Administrative Claim, or (c) as may be agreed upon between the Holder of such Allowed Administrative Claim and the Debtors.

Section 2.2. *Priority Tax Claims*

Each Allowed Priority Tax Claim shall be paid by the Debtors in full, in Cash, upon the later of (a) the Effective Date, (b) the date upon which there is a Final Order allowing such Priority Tax Claim, (c) the date such an Allowed Priority Tax Claim would have been due and payable if the Chapter 11 Cases had not been commenced, or (d) as may be agreed upon between the Holder of such Allowed Priority Tax Claim and the Debtors.

Section 2.3. *Professional Fees*

All final applications for Professional Fees for services rendered in connection with the Chapter 11 Cases prior to the Confirmation Date shall be filed with the Bankruptcy Court not later than sixty days after the Effective Date.  Without limiting the foregoing, the Debtors may pay fees of Professionals incurred by the Debtors on or after the Confirmation Date, together with any related disbursements, expenses, or similar items without application to or approval by the Bankruptcy Court.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

*Overview*.  For the purposes of voting, confirmation and distribution pursuant to the Plan, all Claims against and Equity Interests in the Debtors shall be classified as set forth in this Article III.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Intercompany Claims are not classified and shall be discharged in accordance with Section 3.1 hereof.

6

Section 3.1. *Substantive Consolidation and Treatment of Intercompany Claims*

A. *Substantive Consolidation*

On the Effective Date, the Chapter 11 Cases and the Debtors and their estates shall be deemed to be substantively consolidated for voting, distribution and confirmation purposes only under this Plan. The assets and liabilities of the Debtors shall be pooled and all Claims shall be satisfied from the assets of a single consolidated estate. Any Claims against one or more of the Debtors based upon a guaranty, indemnity, co-signature, surety or otherwise, of Claims against another Debtor shall be treated as a single Claim against the consolidated estate of the Debtors and shall be entitled to Distributions under this Plan only with respect to such single Claim. On the Effective Date all guarantees of any Debtor of the payment, performance or collection of another Debtor shall be deemed eliminated and canceled. Except as set forth in this Section 3.1(A), such substantive consolidation shall not (other than for purposes related to this Plan) affect (i) the legal and corporate structures of the Debtors or (ii) any obligations under any leases or contracts assumed in this Plan or otherwise subsequent to the filing of the Chapter 11 Cases. Notwithstanding the foregoing, substantive consolidation shall not affect the obligations of any Debtor to pay quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) until such time as such Debtor's particular case is closed, dismissed or converted.

B. *Cancellation of Intercompany Claims*

On the Effective Date, all Intercompany Claims shall be eliminated and extinguished.

Section 3.2. *Classification of Claims and Equity Interests.*

| Class | Claim | Status | Voting Right |
|-------|-------|--------|--------------|
| Class 1 | Priority Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| Class 2 | RTFC/Greenlight Claim | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| Class 3 | Bank of America, N.A. | Impaired | Entitled to Vote |
| Class 4 | Banco Popular de Puerto Rico | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| Class 5 | First Bank | Impaired | Entitled to Vote |
| Class 6 | PHH Mortgage | Impaired | Entitled to Vote |
| Class 7 | General Unsecured Creditors | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| Class 8 | Equity Interests | Unimpaired | Deemed to Accept; Not Entitled to Vote |

Section 3.3. *Treatment of Claims and Equity Interests*

(a)      *Class 1—Priority Claims*

(i)      *Treatment*: The legal, equitable and contractual rights of Holders of Allowed Priority Claims are unaltered by the Plan. Unless a Holder of an Allowed Priority Claim  and the Debtors agree to a different treatment, each Holder of an Allowed Priority Claim shall receive one of the following alternative treatments, at the election of the Debtors:

(A)    to the extent then due and owing on the Effective Date, such Allowed Priority Claim will be paid in full, in Cash, on the Effective Date by the Debtors;

(B)    to the extent not due and owing on the Effective Date, such Allowed Priority Claim will be paid in full, in Cash, by the Debtors when and as such Allowed Priority Claim becomes due and owing in the ordinary course of business in accordance with the terms thereof; or

(C)    such Allowed Priority Claim will be otherwise treated in any manner such that Class 1 shall not be impaired pursuant to section 1124 of the Bankruptcy Code.

(ii)    *Voting*: Class 1 is Unimpaired.  Holders of Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

(b)    *Class 2—The RTFC/Greenlight Claim*

(i)    *Treatment*:  The Holders of the RTFC/Greenlight Claim shall be paid the amount of $402 million plus interest at the annual rate of 5% from and after July 31, 2006 until such claim has been paid in full pursuant to the Plan.

(ii)    *Voting*:  Class 2 is Unimpaired.  The Holders of the Class 2 Claim are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

(c)    *Class 3—The Claim of Bank of America*

(i)    *Treatment*:  The Class 3 Secured Claim of Bank of America is an Allowed Secured Claim.  Bank of America will retain its existing lien position.  For the six (6) month period following the Effective Date, the Debtors will pay to Bank of America interest only payments on account of Bank of America's claim.  On the date that is six (6) months after the Effective Date, the Debtors shall pay to Bank of America all deferred principal payments, and thereafter, Bank of America will be paid in full according to the terms of its loan documents.

(ii)    *Voting*:  Class 3 is Impaired.  The Holder of this Claim is entitled to vote to accept or reject the Plan.

(d)    *Class 4—The Claim of Banco Popular de Puerto Rico*

(i)    *Treatment*:  The Class 4 Secured Claim of Banco Popular de Puerto Rico is an Allowed Secured Claim.  The Bank will retain its existing lien position and will be paid in full according to the terms of its loan documents

(ii)    Voting: Class 4 is Unimpaired.  The Holder of this Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

(e)    *Class 5—The 5 Claim of First Bank*

(i)    *Treatment*:  The Class 5 Unsecured Claim of First Bank is an Allowed Unsecured Claim.  First Bank will retain its existing lien position on property owned by Prosser's spouse.  For the six (6) month period following the Effective Date, the Debtors will pay to First Bank interest only payments on account of First Bank's claim.  On the date that is six (6) months after the Effective Date, the Debtors shall pay to First Bank all deferred principal

payments, and thereafter, First Bank will be paid in full according to the terms of its loan documents.

(ii)     *Voting*:  Class 5 is Unimpaired.  The Holder of this Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

(f)     *Class 6—The Claim of HCC Mortgage*

(i)     *Treatment*:  The Class 6 Unsecured Claim of HCC Mortgage is an Allowed Unsecured Claim.  HHC Mortgage will retain its existing lien position on property owned by Prosser's spouse.  For the six (6) month period following the Effective Date, the Debtors will pay to HHC Mortgage interest-only payments on account of HHC Mortgage claim.  On the date that is six (6) months after the Effective Date, the Debtors shall pay to HHC Mortgage all deferred principal payments, and thereafter, HHC Mortgage will be paid in full according to the terms of its loan documents.

(ii)     *Voting*:  Class 6 is Impaired.  The holder of this Claim is entitled to vote to accept or reject the Plan.

(g)     *Class 7—General Unsecured Claims*

(i)     *Treatment*:  The legal, equitable and contractual rights of Class 7 Holders of Allowed General Unsecured Claims are unaltered by the Plan.  Unless the Holder of an Allowed General Unsecured Claim and the Debtors agree to a different treatment, each Holder of an Allowed General Unsecured Claim shall receive one of the following alternative treatments, at the election of the Debtors:

(A)     to the extent then due and owing on the Effective Date, such Allowed General Unsecured Claim (including Postpetition Interest thereon, if any) will be paid in full, in Cash, by the Debtors in accordance with the terms thereof;

(B)     to the extent not due and owing on the Effective Date, such Allowed General Unsecured Claim (including Postpetition Interest thereon, if any) will be paid in full, in Cash, by the Debtors when and as such Allowed General Unsecured Claim becomes due and owing in the ordinary course of business in accordance with the terms thereof; or

(C)     such Allowed General Unsecured Claim (including Postpetition Interest thereon, if any) will be otherwise treated in any other manner such that Class 3 shall not be impaired pursuant to section 1124 of the Bankruptcy Code.

(ii)     *Voting*:  Class 7 is Unimpaired.  Holders of General Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

(h)     *Class 8—Equity Interests*

(i)     *Treatment*:  The legal, equitable and contractual rights of Holders of Class 8 Equity Interests are unaltered by the Plan.  Unless the Holder of an Interest in this Class and the Debtors agree to a different treatment, each Holder of a Class 8 Equity Interest shall retain its Equity Interests.

(ii)    *Voting*: Class 8 is Unimpaired.  Holders of Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

Section 3.4. *Miscellaneous*

(a)    Notwithstanding any other provision of the Plan, any Allowed Claim shall be reduced by the amount, if any, that was paid by the Debtors to the Holder of such Claim prior to the Effective Date, including pursuant to any Final Order entered by the Bankruptcy Court.  Nothing in the Plan shall preclude the Debtors from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

(b)    Except as otherwise provided in the Plan, the Confirmation Order, any other order of the Bankruptcy Court or any document or agreement entered into and enforceable pursuant to the terms of this Plan, nothing shall affect the Debtors' Causes of Action, rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to, and setoffs or recoupments against, Unimpaired Claims and all Causes of Action for the affirmative relief against the holders thereof.

## ARTICLE IV

## CRAM DOWN

If any Impaired Class of Claims entitled to vote shall not accept the Plan, the Debtors reserve the right to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or to seek to amend or modify the Plan in accordance with Section 12.3 hereof.  With respect to any Impaired Class of Claims or Equity Interests that is deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 5.1. *Operation of Business and Management of Assets After Effective Date.*

(a)  On and after the Effective Date, the Debtors may operate their respective businesses and may use, acquire or dispose of property and compromise or settle any Claims or Equity Interests in or Claims against them or any of them, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

(b)  Those creditors with Allowed Secured Claims shall retain their Liens on, or security interests in, property of the respective Debtors and any right of setoff under section 553 of the Bankruptcy Code until the earlier of payment in full of the obligation so secured or sale of the underlying asset, in which case the lien shall attach to the proceeds of such sale.

Section 5.2. *The Responsible Officer*

The Responsible Officer appointed by the Bankruptcy Court shall remain in place and shall exercise the full scope of authority provided by the Order appointing him or her until the earlier of the date of entry of an order by the Bankruptcy Court terminating such appointment and December 31, 2007.

Section 5.3. *Refinancing and Sale Transactions*

(a)  The Debtors shall continue to pursue the sale of the V.I. Telecommunications Assets and a possible refinancing based upon such assets to the extent necessary to make all payments required to Holders of Allowed Claims in Class 2, except as may otherwise be agreed by the Debtors and any such Holder.

(b)  The Debtors shall continue to pursue the sale of the Designated Sale Assets to the extent necessary to facilitate payment in full to the Holders of the Allowed Claims in Class 2 and Class 7, except as otherwise agreed by the Holder of such Allowed Claim and the Debtors.

(c)  The Debtors reserve the right to prepay any and all claims in their discretion.

(d)  In the event the Allowed Claim in Class 2 has not been paid in full as of December 31, 2007 and, absent agreement to the contrary from the Holders of the Allowed Claim in Class 2 and the Debtors, ICC-LLC and Emerging shall (i) cause each of their directors and officers to resign their positions effective as of that date, and (ii) take, and cause each of their employees, officers and directors to take, such action as may be necessary and appropriate to implement the terms of the Settlement Agreement that are applicable following non-payment thereunder.

Section 5.4. *Intercompany Claims*

On the Effective Date, (i) the Intercompany Claims of Debtors or their affiliates against Debtors shall be discharged and (ii) except as otherwise provided herein, the Equity Interests of a Debtor in any Debtor or non-Debtor subsidiary shall remain outstanding.

Section 5.5. *Continued Corporate Existence and Vesting of Assets in Debtors*

Emerging and ICC-LLC shall each continue to exist after the Effective Date as a separate corporate entities, with all the powers of a corporation under the laws of their respective states of incorporation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such state law.  Except as otherwise provided in the Plan, all property of the Estates of the Debtors, and any property acquired by the Debtors under the Plan, shall vest in the Debtors, free and clear of all Claims, Liens, charges or other encumbrances and Interests.  On and after the Effective Date, the Debtors may operate their respective businesses and may use, acquire or dispose of property and compromise or settle any Claims or Equity Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the generality of the foregoing, all rights, privileges, entitlements, authorizations, grants, permits, licenses, easements, franchises and other similar items which constitute part of, or are necessary or useful in the operation of, the property of the Estates or the business of the Debtors, whether in the United States or elsewhere, shall be vested in the Debtors (as applicable) on the Effective Date, and shall thereafter be exercisable and usable by the Debtors to the same and fullest extent they would have been exercisable and usable by the Debtors before the Petition Date.

Section 5.6. *Retention of Debtors' Equity Interests*

On the Effective Date, except to the extent provided elsewhere in the Plan or the Confirmation Order, and provided that the treatments provided for herein and the Effective Date distributions contemplated by Article III hereof are made, all Equity Interests shall be retained by the Holders thereof.

Section 5.7. *Execution of Related Documents*

On the Effective Date, all Plan Documents and any other agreement entered into or instrument issued in connection therewith shall be executed and delivered by the Debtors and shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto and as specified herein.

Section 5.8. *Corporate Governance, Directors and Officers, and Corporate Action*

(a)    *Directors and Officers of the Debtors.*  Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, and except as otherwise disclosed in the Disclosure Statement, as of the Effective Date, the existing directors and officers of the corporate Debtors shall remain as directors and officers of the corporate Debtors.

(b)    *Corporate Action.*  On the Effective Date, any and all actions contemplated by the Plan (whether to occur before, on or after the Effective Date of the Plan) shall be authorized and approved in all respects (subject to the provisions of the Plan).  All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Corporate Debtors shall be deemed to have occurred and shall be in effect, without any requirement of further action by the equity holders or directors of the Debtors.  On the Effective Date, the appropriate officers of the Debtors and members of the boards of directors of the Debtors are authorized and directed to issue, execute and deliver the agreements, documents, securities and instruments, if any, contemplated by the Plan in the name of and on behalf of the Debtors.  The authorizations and approvals of the corporate actions in this Section 5.8(b) shall be effective notwithstanding any requirements under any applicable state law or other applicable non-bankruptcy law.

Section 5.9. *Elimination of Classes*

Any Class of Claims or Equity Interests that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or an Allowed Equity Interest, or a Claim temporarily allowed under Rule 3018 of the Bankruptcy Rules, shall be deemed deleted from the Plan for all purposes.

# ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 6.1. *Assumption of Executory Contracts and Unexpired Leases*

Immediately prior to the Effective Date, all executory contracts or unexpired leases of the Debtors, including the Settlement Agreement, will be deemed assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code except those executory contracts and unexpired leases that (1) have been rejected by order of the Bankruptcy Court, (2) are the subject of a motion to reject pending on the Effective Date, (3) are identified on a list to be filed with the Bankruptcy Court on or before the Confirmation Date as to be rejected or (4) are rejected pursuant to the terms of the Plan.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed pursuant to this Article VI shall revest in and be fully enforceable in accordance with its terms by the respective Debtor, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law.

Section 6.2. *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be filed with the Bankruptcy Court within thirty days after the date of entry of the Confirmation Order.  Any Claims arising from the rejection of an executory contract or unexpired lease for which proofs of claim are not filed within such time will be forever barred from assertion against the Debtors, their Estates and their property unless otherwise ordered by the Bankruptcy Court.  All Allowed Claims arising from rejection of executory contracts or unexpired leases for which proofs of claim have been timely filed will be, and will be treated as, Allowed General Unsecured Claims subject to the provisions of Article III hereof, and subject to any limitation on allowance of such Claims under section 502(b) of the Bankruptcy Code or otherwise.

Section 6.3. *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Except as otherwise set forth herein, any monetary amounts by which any executory contract or unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such executory contract or unexpired lease may otherwise agree.  In the event of a dispute regarding (1) the amount of any cure payments, (2) the ability of the Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption, underlined provided that any such dispute with respect to assumption of the Settlement Agreement shall be resolved prior to, or as part of, the Confirmation Hearing.

Section 6.4. *Indemnification of Directors, Officers and Employees*

The obligations of the Debtors to indemnify any Person serving at any time on or prior to the Effective Date as one of their directors, officers or employees by reason of such Person's service in such capacity, or as a director, officer, partner, trustee, employee or agent of any other corporation, partnership, joint venture, trust or other enterprise, at the Debtors' request, including with respect to employee benefit plans, to the extent provided in the Debtors' constituent documents, by a written agreement with the Debtors or applicable state law, each as applicable, shall be deemed and treated as executory contracts that are assumed by the Debtors pursuant to the Plan and section 365 of the Bankruptcy Code as of the Effective Date.  Accordingly, such indemnification obligations shall be treated as General Unsecured Claims and shall survive unimpaired and unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date, except if such claim or liability is determined pursuant to a Final Order to have resulted from the gross negligence, willful misconduct, fraud or criminal conduct of such indemnified Person.  For a period of at least six years following the Effective Date, the Debtors shall maintain directors' and officers' liability insurance (covering all of the Debtors' existing and former directors and officers) in an amount and on terms that are no less favorable to such directors and officers than the directors' and officers' liability insurance that was in effect immediately prior to the Petition Date.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

Section 7.1. *Distribution for Claims and Equity Interests Allowed as of the Effective Date*

(a)     All distributions to the Holders of Allowed Claims shall be administered by the Responsible Officer.

(b)     Except as otherwise provided in this Article VII or as may be ordered by the Bankruptcy Court, distributions to be made on the Effective Date on account of Claims or Equity Interests that are Allowed as of the Effective Date and are entitled to receive distributions under the Plan shall be made on the Effective Date or as soon as practicable thereafter except as otherwise specified herein.  Distributions on account of Claims that become Allowed Claims after the Effective Date shall be made pursuant to Articles II and III hereof.

Section 7.2. *Delivery and Distributions and Undeliverable or Unclaimed Distributions*

(a)     *Delivery of Distributions in General.*  Except as otherwise specified in the Plan, including this section 7.2, any distribution to a Holder of an Allowed Claim or Allowed Equity Interest in accordance with Article III hereof will be made to such Holder of record as of the Distribution Record Date at the address of such Holder as indicated in the records of the Debtors.

13

      (b)     *Undeliverable Distributions.*

          (i)     *Holding of Undeliverable Distributions.*  If any distribution to any Holder of an Allowed Claim or Allowed Equity Interest is returned as undeliverable, no further distributions shall be made to such Holder unless and until the Debtors are notified in writing of such Holder's then current address.  Undeliverable distributions shall remain in the possession of the Debtors pursuant to this Article VII until such time as a distribution becomes deliverable.  Undeliverable Cash shall not be entitled to any interest, dividends or other accruals of any kind.

          (ii)     *After Distributions Become Deliverable.*  Except as otherwise provided herein, within 20 days after the end of each calendar quarter following the Effective Date, the Debtors shall make all distributions that become deliverable during the preceding calendar quarter.

          (iii)     *Failure to Claim Undeliverable Distributions.*  The Debtors will file with the Bankruptcy Court, from time to time, a listing of the Holders of unclaimed distributions.  This list will be maintained until the entry of an order and/or final decree closing the Chapter 11 Cases.  Any Holder of an Allowed Claim or Allowed Equity Interest that does not assert its rights with respect to an undeliverable distribution within one year after the Effective Date shall have such rights discharged and shall be forever barred from asserting such rights against the Debtors or their properties.

          (iv)     *Compliance with Tax Requirements.*  Any federal, state or local withholding taxes or amounts required to be withheld under applicable law shall be deducted from distributions hereunder.  All Entities holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

Section 7.3. *Timing and Calculation of Amounts to Be Distributed*

On or as soon as practicable after the Effective Date (except as otherwise specified in the Plan), each Holder of an Allowed Claim or Allowed Equity Interest shall receive the full amount of the distributions that the Plan provides for such Allowed Claim or Allowed Equity Interest in the applicable Class.  Beginning on the date that is twenty calendar days after the end of the calendar quarter following the Effective Date and twenty calendar days after the end of each calendar quarter thereafter, distributions also shall be made, pursuant to Section 8.2 below, to Holders of Disputed Claims whose Disputed Claims were allowed during the preceding calendar quarter.  Such quarterly distributions shall also be in the full amount that the Plan provides for Allowed Claims in the applicable Class.

Section 7.4. *Setoffs and Recoupments*

The Debtors may, pursuant to applicable law, set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and Causes of Action of any nature that the Debtors may hold against the Holder of such Allowed Claim; *provided, however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claims, rights and Causes of Action that the Debtors may possess against such Holder.

Section 7.5. *Manner of Payment Under Plan of Reorganization*

At the option of Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

# ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

Section 8.1. *Prosecution of Objections to Claims*

After the Confirmation Date, the Debtors shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment objections to any Claims, and may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  All Disputed Claims shall be determined, resolved or adjudicated in the manner in which such Claims would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced, unless the Debtors, at their election, choose to determine, resolve or adjudicate in the Bankruptcy Court any Disputed Claim arising during these Chapter 11 Cases.

The Debtors intend to make distributions as required by the Plan and in accordance with the official claims register maintained in these cases or, to the extent a proof of claim was not filed with respect to any Claim that is not a Disputed Claims, in accordance with the Schedules.

Notwithstanding anything contained herein, any and all disputes or controversies regarding the entitlement to postpetition interest on account of any Claim (or the amount owed in respect of such postpetition interest) will be adjudicated before the Bankruptcy Court at the Confirmation Hearing or as soon as practicable thereafter, and upon entry of any Final Order requiring the payment of such postpetition interest, the Debtors shall promptly make such payments to the designated parties.

Section 8.2. *Payments and Distributions on Disputed Claims*

Notwithstanding any provision in the Plan to the contrary, except as otherwise agreed by the Debtors in their sole discretion, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order.  Subject to the provisions of this Article VIII, after a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim will receive all payments and distributions to which such Holder is then entitled under the Plan, without payment of interest on such Allowed Claim.  Notwithstanding the foregoing, any Entity or Person who holds both an Allowed Claim(s) and a Disputed Claim(s) will receive the appropriate payment or distribution on the Allowed Claim(s), although, except as otherwise agreed by the Debtors in their sole discretion, no payment or distribution will be made on the Disputed Claim(s) until such dispute is resolved by settlement or Final Order.

# ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF THE PLAN

Section 9.1. *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation of the Plan that (a) the Court shall have authorized the Debtors to assume the Settlement Agreement (which authorization shall be set forth in the Confirmation Order), (b) all provisions, terms and conditions of the Plan shall have been approved in the Confirmation Order or waived pursuant to the provisions of Section 9.3 below and (c) the identity of the individuals proposed to serve on the boards of directors of the Debtors shall have been disclosed to the Bankruptcy Court.

Section 9.2. *Conditions Precedent to Occurrence of the Effective Date*

It shall be a condition to the distributions under the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Section 9.3 of the Plan:

(a)      the Confirmation Order shall have been approved by the Bankruptcy Court and duly entered on the docket for the Chapter 11 Cases by the Clerk of the Bankruptcy Court, shall not have been modified without the

consent of the Debtors, shall not be subject to a pending motion pursuant to section 1144 of the Bankruptcy Code and shall have become a Final Order;

(b)    all conditions to the assumption of the Settlement Agreement shall have been satisfied or waived;

(c)    there shall not be in effect any order, law or regulation staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan or any Plan Document;

(d)    all consents, approvals and actions of, filings with and notices to any governmental or regulatory authority necessary to permit consummation of the Plan and the transactions contemplated thereby shall have been duly obtained, made or given and shall be in full force and effect, and all terminations or expirations of waiting periods imposed by any governmental or regulatory authority necessary for the consummation of the transactions contemplated by the Plan shall have occurred; and

(e)    all other actions and documents necessary to implement the provisions of the Plan on the Effective Date shall have been, respectively, effected or duly executed and delivered.

Section 9.3. *Waiver of Conditions*

The Debtors may waive any of the conditions precedent to Confirmation of the Plan set forth in Section 9.1 above, and the conditions precedent to occurrence of the Effective Date set forth in Section 9.2(i)-(f) above, at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than a proceeding to confirm and/or consummate the Plan.

Section 9.4. *Effect of Non-Occurrence of Effective Date Conditions*

If the conditions to occurrence of the Effective Date have not been satisfied or waived in accordance with this Article IX on or before the first Business Day that is more than 90 days after the Confirmation Date or by such later date as is approved by the Bankruptcy Court after notice and a hearing, then on motion by the Debtors made, prior to the time that all of the conditions have been satisfied or waived, the Bankruptcy Court may vacate the Confirmation Order and the Confirmation Order shall be of no force and effect.  Notwithstanding the foregoing, the Confirmation Order shall not be vacated if all of the conditions to the occurrence of the Effective Date set forth in this Article IX are either satisfied or waived, in accordance with the terms hereof, prior to entry by the Bankruptcy Court of an order granting the relief requested in such motion.

If the Confirmation Order is vacated, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by or against the Debtors or any Debtors' Equity Interest; (2) prejudice in any manner the rights of the Debtors; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors in any respect.

Section 9.5. *Substantial Consummation of Plan*

Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

## ARTICLE X

## RELEASE, INJUNCTIVE AND RELATED PROVISIONS

Section 10.1. *Subordination*

The classification and manner of satisfying all Claims and Equity Interests and the respective distributions and treatments under the Plan take into account or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating

thereto whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Entities from enforcing or attempting to enforce any such contractual, legal and equitable subordination rights satisfied, compromised and settled pursuant to this Article X.

Section 10.2. *Releases*

In consideration of the contributions of certain parties to the Chapter 11 Cases and the waivers of Claims, rights and Causes of Action in Section 10.3, including, but not limited to, the waiver by certain parties (or their affiliates) of rights against one or more of the Debtors, the Plan provides for certain waivers, exculpations, releases and injunctions.

(a)    *Releases by Debtors.*  As of the Effective Date, for good and valuable consideration, including, but not limited to, the service of the D&O Releasees, in their capacity as such, to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, the Debtors hereby release:

(i)    all D&O Releasees and their respective officers, directors, partners, members, employees, attorneys, financial advisors, accountants, investment bankers, agents, professionals and representatives, each in such capacity; and

(ii)    the property of each of the foregoing Entities and Persons,

from any and all Claims and from all Causes of Action that the Debtors or their respective affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Entity or Person, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date for Claims or liabilities in connection with or related to the Debtors, the Reorganized Debtors, their respective affiliates, the Chapter 11 Cases or the Plan; *provided*, *however*, that there shall be no such release on account of claims or liabilities (x) in respect of any loan, advance or similar payment by the Debtors or their affiliates to any such Entity or Person, or (y) in respect of any contractual obligation owed by such Entity or Person to the Debtors or their affiliates; *provided*, *further*, that the foregoing provisions of this Section 10.2(a) shall have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, fraud or criminal conduct

(b)    *Releases by and of Holders of Claims and Equity Interests.*  On and after the Effective Date, each Holder of a Claim or Equity Interest who has voted to accept the Plan or is deemed to accept the Plan shall be deemed to have released unconditionally the Debtors and their respective affiliates and each of the foregoing Entities' or Persons' respective officers, directors, employees, partners, members, attorneys, financial advisors, accountants, investment bankers, agents, representatives and professionals, each in such capacity, and the property of each of the foregoing Entities or Persons, from any and all Claims or Causes of Action based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date in any way relating to or pertaining to (i) the Debtors or their respective affiliates, (ii) the Chapter 11 Cases and (iii) the negotiation, formulation and preparation of the Plan, the Disclosure Statement, the Plan Documents or the Plan Supplements; *provided*, *however*, that the foregoing provisions of this Section shall have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, fraud or criminal conduct.

Section 10.3. *Preservation of Rights of Action*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall retain and may exclusively enforce any Claims, rights and Causes of Action that the Debtors or Estates may hold against any Person or Entity. The Debtors may pursue such retained Claims, rights or Causes of Action, as

17

appropriate, in accordance with the best interests of the Debtors. On the Effective Date, the Debtors shall be deemed to waive and release any Claims, rights or Causes of Action arising under sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or otherwise arising under the Bankruptcy Code, held by the Debtors against any Person or Entity, except for any such action which may be pending as of the Voting Deadline as to which the Debtors' rights shall not be waived and released, and the Debtors shall retain and may prosecute any such action.

Section 10.4. *Exculpation*

The Debtors, each of their respective affiliates, the D&O Releasees and each of the foregoing Entities' or Persons' respective members, partners, officers, directors, employees and agents (including any attorneys, accountants, financial advisors, investment bankers and other representatives or professionals retained by such Entities or Persons), and the property of each of the foregoing Entities or Persons, shall have no liability to any Entity or Person, whether arising under contract, tort, federal or state securities laws, whether known or unknown, foreseen or unforeseen, existing or arising in the future, for any pre-petition or post-petition act or omission in connection with, or arising out of, the Disclosure Statement, the Plan or any Plan Document, including any Bankruptcy Court orders related thereto, the solicitation of votes for and the pursuit of Confirmation of this Plan, the Effective Date of this Plan, or the administration of this Plan or the property to be distributed under this Plan and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan; *provided*, *however*, that the foregoing provisions of this Section 10.4 shall have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, fraud or criminal conduct (the acts or omissions entitled to exculpation pursuant to this Section 10.4, the "Exculpated Acts").

The Debtors shall, from and after the Effective Date, indemnify, hold harmless and reimburse (on an as-incurred basis) each of the foregoing Entities' or Persons' members, partners, officers, directors, employees and agents (including any attorneys, accountants, financial advisors, investment bankers and other representatives or professionals retained by such Entities or Persons) (collectively, the foregoing Entities and Persons are the "Indemnified Parties"), and the property of each of the Indemnified Parties, from, against and for any and all losses, claims (as defined in section 101(5) of the Bankruptcy Code), damages, liabilities, costs and/or expenses (together, the "Damages") arising from, related to or that are in any manner connected with any Exculpated Act, including without limitation, any Damages arising or resulting from or that are in any manner connected with (i) any Cause of Action, suit, investigation or any other proceeding and (ii) the defense of any Indemnified Party (or the involvement or participation of any Indemnified Party) in any Cause of Action, suit, investigation or any other proceeding.

Section 10.5. *Injunction*

Except as otherwise provided herein or the Confirmation Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code, the Confirmation Order shall provide that, on and after the Effective Date, all persons who have held, currently hold or may hold a Claim against the Debtors or an Equity Interest (whether directly or indirectly and whether as a beneficial holder of such Claim or Equity Interest or as a holder of record of such Claim or Equity Interest or otherwise) that is discharged under the Plan are permanently enjoined, on and after the Confirmation Date and subject to the occurrence of the Effective Date, from taking any of the following actions on account of any such Claim or Equity Interest: (a) commencing or continuing in any manner (including by directly or indirectly assisting or facilitating the commencement or continuation of) any action or other proceeding of any kind with respect to any such Claim or Equity Interest, against the Debtors or their respective properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors or their respective properties on account of any such Claim or Equity Interest; (c) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtors or their respective properties or interests in their respective properties on account of any such Claim or Equity Interest; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due from the Debtors or against the properties or interests in property of the Debtors on account of any such Claim or Equity Interest; (e) authenticating, delivering or facilitating the delivery of any certificate; and (f) commencing, continuing or in any manner taking part or participating in any action, proceeding or event (whether directly or indirectly) that would be in contravention of the terms, conditions and intent of the Plan, including the releases and exculpations provided in Sections 10.2 and 10.4 of the Plan. The foregoing injunction will extend to the benefit of the successors of the Debtors and the Entities and

Persons entitled to the benefit of the releases and exculpations provided in Sections 10.2 and 10.4 of the Plan, and their respective properties and interests in property.  Any person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms, or as provided in the Bankruptcy Code.

## ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, subject to the terms of Section 8.1 hereto, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Plan, the Confirmation Order and the Chapter 11 Cases to the fullest extent permitted by law, including, without limitation, jurisdiction to:

(a)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

(b)     Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(c)     Resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtors are party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

(d)     Ensure that distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of the Plan, including ruling on any motion filed pursuant to Article VIII;

(e)     Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(f)     Enter such orders and take other actions as may be necessary or appropriate to implement or consummate the provisions of the Plan and the Confirmation Order, including, but not limited to, modification or amendment thereof pursuant to Section 12.3 of the Plan, and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan or the Disclosure Statement;

(g)     Resolve any cases, controversies, suits or disputes that may arise in connection with the interpretation or enforcement of the Plan or any Entity's or Person's obligations incurred in connection therewith;

(h)     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity or Person with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided herein;

(i)     Resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article X and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

(j)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(k)        Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement;

(l)        Enter an order or final decree concluding the Chapter 11 Cases;

(m)       Resolve any disputes concerning whether an Entity or Person had sufficient notice of the Chapter 11 Cases, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the Confirmation of this Plan for the purpose of determining whether a Claim or Equity Interest is discharged hereunder or for any other purpose;

(n)        Recover all assets of the Debtors and property of the Estate, wherever located;

(o)        Hear and resolve all matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(p)        Hear and resolve all matters involving the nature, existence or scope of the Debtors' discharge;

(q)        Effectuate performance of or payment of all obligations under the Plan; and

(r)        Hear and resolve all matters involving modification of the Plan under section 1127 of the Bankruptcy Code.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

Section 12.1. *Payment of Statutory Fees*

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date.

Section 12.2. *Discharge of Debtors*

Except as otherwise provided herein or in the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, (1) the rights afforded in the Plan, and the treatment of all Claims and Equity Interests therein, shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Equity Interests of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred on such Claims from and after the Petition Date, against the Debtors, or any of their Estates, assets or properties, (2) on the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied, discharged and released in full and (3) all Entities and Persons shall be precluded from asserting against the Debtors, their successors or their assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

Section 12.3. *Modification of Plan*

Subject to compliance with section 1127 of the Bankruptcy Code and, to the extent applicable, compliance with sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtors reserve the right to alter, amend or modify this Plan, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan, at any time prior to the Effective Date.

Except as provided in the preceding paragraph, a Holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended, modified or clarified in accordance with this

Article XII, unless the proposed alteration, amendment, modification or clarification adversely changes the treatment of the Claim of such Holder.

Section 12.4. *Revocation of Plan*

The Debtors reserve the right to revoke and withdraw the Plan at any time prior to the Confirmation Date. If the Plan is so revoked or withdrawn, or if the Effective Date does not occur, then the Plan shall be deemed null and void, and of no force or effect.

Section 12.5. *Successors and Assigns*

The rights, benefits and obligations of any Entity or Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity or Person.

Section 12.6. *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall have entered the Confirmation Order. None of the filing of this Plan, any statement or provision contained herein or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to Holders of Claims or Equity Interests prior to the Effective Date.

Section 12.7. *Section 1145 Exemption*

Pursuant to section 1145(a) of the Bankruptcy Code, the offer, issuance, transfer or exchange of any security under the Plan, or the making or delivery of an offering memorandum or other instrument of offer or transfer under this Plan, shall be exempt from section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer or a security. Subject to the ICC-LLC revised certificate of incorporation, all securities issued under the Plan and covered by section 1145(a)(1) of the Bankruptcy Code may be resold by holders thereof without registration, unless the holder is an "underwriter" (as defined in section 1145(b)(1) of the Bankruptcy Code) with respect to such securities.

Section 12.8. *Headings*

Headings utilized in the Plan are for the convenience of reference only and shall not constitute a part of the Plan for any other purpose.

Section 12.9. *Governing Law*

Except to the extent that the Bankruptcy Code or other federal law is applicable, the Plan shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the principles of conflict of laws thereof that would require application of the law of another jurisdiction.

Section 12.10. *Severability*

If, prior to entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Section 12.11. *Implementation*

The Debtors shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in this Plan.

Section 12.12. *Inconsistency*

In the event of any inconsistency among the Plan, the Disclosure Statement, the Plan Documents, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

Section 12.13. *Further Assurances*

The Debtors and all Holders of Claims and Equity Interests receiving distributions under the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

Section 12.14. *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors shall be sent by first class U.S. mail, postage prepaid, to:

Innovative Communication Corporation
Bjerget House
P.O. Box 1730
St. Croix, U.S. Virgin Islands  00821

with copies to:

Shearman & Sterling LLP
599 Lexington Avenue
New York, NY  10022
Attn:  Douglas P. Bartner, Esq.,
        Scott C. Shelley, Esq.,
        Lynette C. Kelly, Esq.

and

SHULMAN ROGERS GANDAL PORDY & ECKER, P.A.
11921 Rockville Pike, Rockville, MD 20852
Telephone:  (301) 230-5231
Facsimile:  (301) 230-2891
Attn:  Michael J. Lichtenstein

and

ROBERT F. CRAIG, PC
1321 Jones Street, Omaha, NE 68102
Attn:  Robert F. Craig
Jenna B. Taub.

Section 12.15. *Exemption from Certain Transfer Taxes*

Pursuant to section 1146 of the Bankruptcy Code:  (a) the issuance, transfer or exchange of any securities, instruments or documents; (b) the creation of any other Lien; (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in

connection with the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated in the Plan; and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.    Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

Section 12.16. *Compromise of Controversies*

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.    The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates and any Entity holding Claims against the Debtors.

Section 12.17. *No Admissions*

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by an Entity with respect to any matter set forth herein.

Section 12.18. *Filing of Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

Section 12.19. *Allocation of Payments*

To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted, be allocated for income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

[signatures on following page]

23

Respectfully submitted,

Dated as of January 8, 2007

INNOVATIVE COMMUNICATION COMPANY, LLC

By:   /s/  Jeffrey J. Prosser

EMERGING COMMUNICATIONS, INC.

By:   /s/  Jeffrey J. Prosser

JEFFREY J PROSSER

By:   /s/ Jeffrey J. Prosser