## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## BANKRUPTCY DIVISION
## DIVISION OF ST. THOMAS AND ST. JOHN

IN RE:

JEFFREY J. PROSSER,                            Bankruptcy No. 06-30009

    Debtor                                    Chapter 7

ROBERT F. CRAIG, P.C.

    Plaintiff

v.                                             Adversary No. 08-03051
                                               **Related to Doc. No. 25** Motion of Steven A.
                                               Felsenthal, Chapter 11 Examiner of the Jeffrey Prosser
                                               Bankruptcy Estate, For Authority to Assert Causes of
                                               Action on Behalf of the Estate of Jeffrey J. Prosser

GREENLIGHT CAPITAL
QUALIFIED, L.P., GREENLIGHT
CAPITAL, L.P, and
GREENLIGHT CAPITAL OFFSHORE,
LTD.,
    Defendants


**MEMORANDUM OPINION**[1]

    Before the court is the Motion of Steven A. Felsenthal, Chapter 11 Examiner[2] of the Jeffrey

---

[1] This Memorandum Opinion constitutes our findings of fact and conclusions of law.

[2] The Examiner was appointed in Jeffrey Prosser's case while it was in Chapter 11. The case was converted to a Chapter 7, and a trustee was appointed. According to the Examiner's Supplemental Response, he does not seek standing as the former examiner of the Chapter 11 estate, but rather in his capacity as an administrative claimant and party-in-interest. Doc. No. 49, at ¶ 7. Unless otherwise noted, Doc. Nos. refer to Adversary No. 08-3051.

1

Prosser Bankruptcy Estate, for Authority to Assert Causes of Action on Behalf of the Estate of Jeffrey Prosser, Doc. No. 25. The Chapter 7 Trustee and Greenlight Capital Qualified, L.P., Greenlight Capital, L.P., and Greenlight Capital Offshore, Ltd., (collectively, "Greenlight") objected to the motion. Doc. Nos. 32 and 34. From the outset, the court acknowledges the highly unusual issue presented by the Examiner's motion. The preference action was initiated by Plaintiff, Robert F. Craig, P.C. (hereinafter "Craig Firm"), Debtor's bankruptcy counsel. The Trustee declined to pursue this preference action, and this adversary proceeding was commenced by a party who could not represent the estate due to a conflict of interest. *See* discussion *infra* at pp. 7-9. Despite the court's decision to hold the proceeding open for sixty days to provide an opportunity for an eligible party to request derivative standing, the Examiner is the only party to come forward. The request for derivative standing by the Examiner requires the court to first determine whether a party who served as examiner in a case qualifies as an appropriate party to pursue an avoidance action on behalf of the estate.

Background

On January 9, 2006, the Delaware Chancery Court granted judgment in favor of Greenlight and against Jeffrey Prosser, among others, in the principal amount of approximately $56 million plus retroactive interest from 1998. On January 20 and January 27, 2006, Greenlight recorded the Delaware judgment in Essex County, New York, and Palm Beach County, Florida, respectively. By doing so, Greenlight obtained judgment liens on Prosser's real property located in those jurisdictions.

On February 10, 2006, Greenlight filed an involuntary Chapter 11 petition against Prosser. Subsequently, Greenlight and Prosser, among others, entered into an agreement referred to by the

2

parties as the Terms and Conditions, which provided Prosser and his companies with the opportunity to make a substantially reduced cash payment in the amount of $402 million on account of claims aggregating more than $650 million in exchange for a full release of all claims.[3] The settlement was conditioned upon payment by July 31, 2006. On June 6, 2006, the parties executed the Release Agreement, whereby Prosser, on his own behalf and on behalf of his companies, purported to release any and all claims against Greenlight, including bankruptcy claims.[4] The $402 million payment was not made by the deadline provided in the Terms and Conditions, and on July 31, 2006, Prosser filed his voluntary Chapter 11 petition. Subsequently, the Examiner was appointed. On October 3, 2007, the court converted the case to a Chapter 7 and ordered the appointment of a trustee. Greenlight filed timely proofs of claim for $27,719,973.17,[5] $32,753,352.66,[6] and $31,189,954.38,[7] asserting secured status for portions of these claims due to the judgment liens.

The Examiner requested the Trustee to commence an adversary proceeding against Greenlight to avoid the liens as preferences.[8] The Craig Firm, counsel to Prosser, also sought a

---

[3] The reduced payment was to be full and complete satisfaction of all claims of Greenlight, as well as Rural Telephone Finance Cooperative and National Rural Utilities Cooperative Finance Corporation. Terms and Conditions, Case No. 06-30009, Exhibit A to Doc. No. 29, at 1 (filed under seal).

[4] Release Agreement, Case No. 07-30012, Doc. No. 16 (filed under seal).

[5] Claim No. 5 filed by Greenlight Capital, L.P.

[6] Claim No. 6 filed by Greenlight Capital Qualified, L.P.

[7] Claim No. 7 filed by Greenlight Capital Offshore, Ltd.

[8] Examiner's Motion, Doc. No 25, at 9 ("[T]he Examiner made a formal demand on
(continued...)

3

decision from the Trustee as to whether he intended to pursue an avoidance action.[9]  Upon receipt of the requests, the Trustee produced and circulated among certain creditors, including the Examiner and the Craig Firm, a report providing his analysis of the preference claims.  Exhibit A to Doc. No. 32, Chapter 7 Trustee's Objection.  After receiving comments on this report, the Trustee produced a supplemental report, which was also distributed to these creditors.  Exhibit B to Doc. No. 32, Chapter 7 Trustee's Objection.  Based on his reports and the comments thereto, the Trustee ultimately decided not to pursue the preference claims on the grounds that they were not meritorious and would be more costly than beneficial to the estate.  Chapter 7 Trustee's Objection, Doc. No. 32, at ¶ 23.

On October 2, 2008, in order to avoid the running of the statute of limitations, the Craig Firm commenced this adversary proceeding in its own name, not in the name of the Trustee,[10] and thereafter on October 6, 2008, moved for *nunc pro tunc* authority to pursue the claims on behalf of the bankruptcy estate.  Case No. 06-30009, Doc. Nos. 2143 and 2150.  The court determined that

---

[8](...continued)
counsel for the Trustee to commence an adversary proceeding....");  Chapter 7 Trustee's Objection, Doc. No 32, at ¶ 4 ("[T]he Examiner...made requests to the Trustee to commence an adversary proceeding....").

[9] Chapter 7 Trustee's Objection, Doc. No. 32, at ¶ 19 ("[P]ursuant to a request from the Craig Firm to counsel for the Trustee for a determination on whether the Trustee would prosecute a preference claim seeking to avoid the Greenlight Liens, Trustee's counsel produced a detailed Preliminary Report....").

[10] *See Official Committee of Unsecured Creditors of Cybergenics v. Chinery*, 330 F.3d 548, 561 (3d Cir. 2003), citing 7 Collier on Bankruptcy P 1109.05 as quoting *Fogel v. Zell*, 221 F.3d 955, 965-66 (7th. Cir. 2000) ("If a trustee unjustifiably refuses a demand to bring an action to enforce a colorable claim of a creditor, the creditor may obtain the permission of the bankruptcy court to bring the action in place of, and in the name of, the trustee.").

4

the Craig Firm was not the appropriate representative[11] and ordered that the Adversary Proceeding be kept open to permit an appropriate party to take the place of the Craig Firm as the plaintiff.[12] On December 12, 2008, the Examiner filed his motion to assert the preference action on behalf of the estate. The Examiner was the only party to come forward. Both the Trustee and Greenlight objected to the Examiner's motion.

Analysis

At this time, the court is not addressing whether the preference action is viable, but rather whether the Examiner is an appropriate party to bring the action on behalf of the estate. The Bankruptcy Code provides the trustee with the authority to bring preference actions. 11 U.S.C. § 547. As the Trustee has declined to pursue this action, the court must determine whether granting derivative standing to the Examiner is appropriate. The Examiner contends that he is not seeking the court's authority to proceed in the capacity of an examiner, but rather as an administrative

---

[11] At the hearing held November 17, 2008, the court found that the Craig Firm, as counsel for Prosser, was not the appropriate party to pursue the preference claims. Case No. 06-30009, Doc. No. 2267, at 282. The court noted that permitting the Craig Firm to do so "would be very problematic for [the] firm and [its] fiduciary obligation to Mr. Prosser...." *Id.*

[12] Despite Greenlight's contention that the complaint should have been dismissed when the Craig Firm was denied authority to proceed as estate representative, Federal Rule of Civil Procedure 17(a)(3), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7017, provides, "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." The Craig Firm timely filed the complaint, and the statute of limitations does not preclude the substitution of the Craig Firm with an appropriate estate representative. Furthermore, the District Court, in *Official Committee of Unsecured Creditors v. Clark,* found that, in appropriate circumstances, a bankruptcy court has the authority to grant *nunc pro tunc* relief where permission for derivative standing is sought after filing the complaint. 326 B.R. 532, 560 (W.D. Pa. 2005).

claimant. Greenlight and the Trustee contend that the Examiner's status as an administrative claimant precludes him from prosecuting this action. Chapter 7 Trustee's Objection, Doc. No. 32, at ¶¶ 14-17; Greenlight's Objection, Doc. No. 34, at ¶¶ 30-35. In addition, Greenlight contends that the Examiner's former role as examiner in this case prohibits him from pursuing avoidance of the alleged preferences. Greenlight's Supplemental Objection, Doc. No. 44.

The court will first address the assertion that an administrative claimant cannot be granted derivative standing because he is not a "creditor," as defined by § 101(10) of the Code.[13] The basis for this argument is that derivative standing cases have addressed only requests by creditors and creditors' committees.[14] Neither of the objections identify any authority imposing such a limitation. The asserted limitation ignores the fact that the court's ability to confer derivative standing is not a clearly defined statutory remedy, but rather an equitable one. *Official Committee of Unsecured Creditors of Cybergenics v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003). *Cybergenics* envisions the use of derivative standing to provide a remedy where the system contemplated by the statute breaks down and the party designated to pursue avoidance actions fails to do so. *Id.* Furthermore, neither Greenlight nor the Trustee has identified a reason why an administrative claimant should be

---

[13] "Creditor" is defined as "(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or (C) entity that has a community claim." § 101(10). The Examiner does not contend that he meets this definition and clearly states that he is an administrative claimant. Examiner's Supplemental Response, Doc. No. 49, at ¶ 7.

[14] Chapter 7 Trustee's Objection, Doc. No. 32, at ¶ 14 ("The primary cases on derivative standing in the Third Circuit are limited to creditors and creditors' committees seeking to bring causes of action on behalf of a bankruptcy estate in the place of a trustee."); Greenlight's Objection, Doc. No 34, at ¶ 32 ("Specifically, courts that grant derivative standing to pursue avoidance actions on behalf of the estate have limited the standing to creditors and creditors' committees.").

6

precluded from seeking derivative standing. There is simply no justification for such a requirement as the purpose of granting derivative standing is to benefit the estate as a whole, not merely to benefit the entity pursuing the claim. A creditors' committee, itself, could never be anything other than a postpetition, administrative claimant at any point in the case where it was owed fees. Moreover, the court recognizes that in the Chapter 11 context, where a creditors' committee exists, its appointment is a logical result of the process. Here, however, in Chapter 7, there is no creditors' committee.[15] In *Cybergenics*, the court addressed § 503(b)(3)(B),[16] as support for a court's authority to grant derivative standing. 330 F.3d at 563-66. Despite the fact that the section referred only to "creditors," and not to creditors' committees, the court stated, "[W]e are realists, and we recognize that if we disallow the Committee's derivative suit but sanction derivative suits by individual creditors, the individual creditors could simply substitute themselves as plaintiffs under Fed. R. Civ. Proc. 17(a) and move forward with litigation." *Id.* at 566. Furthermore, the court found that while § 503(b)(3)(B) is evidence that Congress approved of derivative standing, the section is not the source of the court's authority to grant derivative standing. *Id.* at 567. The equitable powers of the court are the source of authority for derivative standing. *Id.*

Only two entities have sought the court's authorization to pursue this claim on behalf of the estate. The Craig Firm sought the court's permission to proceed, asserting administrative claim status as a result of fees allegedly owed when the case was in Chapter 11. The court found that the

---

[15] No committee was organized during the Chapter 11 phase of this case.

[16] "After notice and a hearing, there shall be allowed, administrative expenses...including - (3) the actual, necessary expenses..., incurred by - (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor[.]" 11 U.S.C. § 503(b)(3)(B).

Craig Firm, as Prosser's counsel, could not represent the estate due to conflicts of interest.[17] In light of the highly contentious and ongoing litigation in which Debtor, represented by this counsel, has opposed the Trustee and vice versa, it is clear that the Craig Firm cannot step into the shoes of the Trustee, with whom consultation regarding the litigation will be essential, or serve as an appropriate estate representative on behalf of the creditors. In *Cybergenics*, the court analyzed the conflicts of interest that develop where a debtor-in-possession is the entity with the power to bring avoidance actions. The court explained that, prior to filing for bankruptcy, debtors may go to extreme lengths in an attempt to "'work out' the debtor's financial distress." 330 F.3d 572. In the context of corporate debtors, the court noted that "[managers] make extraordinary concessions...to avoid filing for bankruptcy." *Id.* Where a debtor-in-possession is in the role of trustee, this creates the problem of the "fox guarding the henhouse." *Id.* at 573.[18] In this case, there is an obvious and undeniable

---

[17] Permitting the Craig Firm to pursue this action would be inappropriate, as the competing interests of Prosser and the estate have been demonstrated in numerous proceedings. The Craig Firm cannot possibly litigate against the estate in some proceedings as Prosser's counsel and purport to represent the best interests of the estate in this adversary. For purposes of illustration, the following is a non-exhaustive list of several of the matters in which this conflict of interest is evident: Adv. No. 08-3011, initiated by the Chapter 7 Trustee, seeking the denial of Jeffrey Prosser's discharge on the basis of (I) transferring and concealing property, (II) failing to keep recorded information, (III) fraudulently making false oaths, (IV) failing to explain loss of assets, (V) failure to obey court orders, and (VI) committing bad acts in connection with related cases; Adv. No. 07-3010, a turnover action, in which the Trustee is co-plaintiff, and the defendants include the Debtor and certain of his family members; and exemption litigation, in which the Trustee, among others, objected to Prosser's claimed exemptions, Case No. 06-30009, Doc. No. 1343.

[18] Despite the fact that *Cybergenics* was addressing the debtor-in-possession's tendency to abstain from bringing avoidance actions because of the managers' incentive to "avoid bringing a claim that would amount to reputational self-immolation," the court was pointing out that conflicts of interest can arise where the debtor owes this fiduciary duty to the estate. *Id.* Although Debtor's counsel in this case sought the opportunity to assert the preference claim, this does not avoid the conflicts of interest. The Debtor entered into the Release Agreement, as a part

(continued...)

8

conflict of interest between Prosser and the estate regarding avoidance actions. The Craig Firm's representation of Prosser implicates this conflict and disqualifies the firm from taking on the role of estate representative. The second entity to seek the court's authority to proceed is the Examiner, who also claims an interest as an administrative claimant due to unpaid fees incurred during the Chapter 11. Unlike the Craig Firm, the Examiner is neutral, and no conflict of interest is apparent. However, there are four impediments to the Examiner's request which preclude the court from granting derivative standing.

The first two obstacles are the Code provisions which place limitations on an individual who served as an examiner in a case. The Examiner contends that he is not seeking the court's authority to proceed in the capacity of an examiner, but rather as an administrative claimant, as his service as examiner terminated when the case was converted. We understand the position. However, it is impossible to separate the Examiner's role as examiner from his status as an administrative claimant. In fact, the only reason he has an administrative claim is due to his service as examiner. Furthermore, the fact that the Examiner is no longer serving in that capacity falls squarely into the terms of §§ 321(b) and 327(f), which limit the role that a former examiner can have in a case. Section 321(b) provides that "a person that *has served* as an examiner in the case may not serve as trustee in the case" (emphasis added). "The subsection does not provide exceptions, nor does it give

---

[18](...continued)
of a transaction designed to settle his debts at a discount and dismiss the bankruptcy. Debtor's counsel now seeks to assert a cause of action avoiding this same agreement. Furthermore, the Craig Firm (and others) represented Prosser in the involuntary bankruptcy case pending in the District of Delaware at the time the parties entered into the Release Agreement on June 6, 2006. *See* Order Granting Motion for Admission Pro Hac Vice, Case No. 06-10135, Doc. No. 50 (entered on March 24, 2006); Release Agreement, Case No. 07-30012, Doc. No. 16 (filed under seal).

any indication that a bankruptcy court may exercise discretion to avoid the statute's command. In short, the 321(b) requirement is mandatory." *In re International Distribution Centers, Inc.,* 74 B.R. 221, 221-23 (S.D.N.Y. 1987). By granting derivative standing to pursue the litigation, the court would be authorizing the Examiner to stand in the shoes of the Trustee, as estate representative, which is the exact role that § 321(b) prohibits. Similarly, § 327(f) provides that "[t]he trustee may not employ a person that *has served* as examiner in the case" (emphasis added). Therefore, even if substituting the Examiner for the Trustee were construed as the Trustee's employment of the Examiner, § 327(f) would not permit that relationship.

The third impediment to the Examiner is the description of the role of an examiner in *Cybergenics.* 330 F.3d at 577-78.[19] The Examiner contends that, even if he is considered in his capacity as "examiner," he can still pursue the preference claim on behalf of the estate. Examiner's Supplemental Response, Doc. No. 49, ¶¶ 9-11. In support of this argument, the Examiner cites *Carnegie International Corp.*, 51 B.R. 252 (Bankr. S.D. Ind. 1984). Examiner's Supplemental Response, Doc. No. 49, at ¶ 9. However, this is the case questioned (and not followed) by the Third Circuit in *Cybergenics*. *See* 330 F.3d at 577-78. In *Cybergenics,* the court examined the language of § 1106(b), which describes the role of an examiner as follows: "An examiner appointed under section 1104(d) of this title shall perform duties specified in paragraphs (3)[20] and (4)[21] of subsection

---

[19] In *Cybergenics*, after addressing the availability of derivative standing as an equitable remedy, the court considered other potential remedies available to courts. *Id.* at 576-80. Among the remedies considered was whether the appointment of an examiner with the authority to sue would be appropriate. *Id.* at 577.

[20] Section 1106(a)(3) provides the authority to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to

(continued...)

(a) of this section, and, except to the extent that the court orders otherwise, any other duties of the trustee that the court orders the debtor in possession not to perform." Despite the apparent breadth of this last sentence, the court interpreted "the general words...to embrace only objects similar to those enumerated by the preceding specific words." *Cybergenics*, 330 F.3d at 578. Although the court noted that the proper role of an examiner was not the issue in the case, it expressed the opinion that the "broad grant" is best interpreted to include only those acts relating directly to investigation. *Id.* The court concluded that the examiner's "independent role would likely be jeopardized by an examiner's litigation against a debtor, and [the court] therefore [did] not believe that an examiner can serve as a substitute for either a trustee or a creditors' committee for the purpose of avoiding fraudulent transfers." *Id.* Although *Cybergenics* discussed fraudulent transfers and this case involves alleged preferences, both are avoidance actions and the analysis undertaken by the Court of Appeals applies to both. Therefore, the case law cited by the Examiner that relies on § 1106 to support a bankruptcy court's authority to permit an examiner to prosecute an avoidance action is contrary to the view expressed by the Court of Appeals for the Third Circuit in *Cybergenics*.

In addition to case law and the provisions of the Code, the court recognizes that there are public policy reasons to deny the Examiner's motion. The suggestion that the policy behind §§ 321(b) and 327(f) will not be offended under these circumstances requires the court to look beyond

---

[20](...continued)
the formulation of a plan[.]"

[21] Section 1106(a)(4) requires the examiner to "(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and (B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates[.]"

11

the plain language of the statutes.[22]  Despite the fact that the Examiner does not now have the same disabling conflict as the Craig Firm, the court must note the status an examiner enjoys in a case. When an examiner is appointed, he is granted broad access to the parties and their documents. The threat that an examiner may later use the information obtained through his interviews and investigation to commence litigation may jeopardize the candid relationship between examiners and parties and, as a consequence, minimize the utility of the examiner in the case.

Conclusion

Based upon the foregoing, the Examiner's motion must be denied.  Despite the fact that two administrative claimants have sought the court's permission to represent the estate, they cannot serve in that capacity.  Therefore, the court denies the motion based solely on the fact that there is no qualified estate representative who is willing to undertake this action.  The court makes no findings as to whether the elements justifying a grant of derivative standing are present in this case, as no appropriate party has come forward.[23]   Nothing herein shall be construed as determining whether or not a colorable claim exists, whether the benefit of pursuing this litigation outweighs the

---

[22] The Examiner contends that "[t]he purpose of both Section 321(b) and 327(f) is to remove the temptation of an examiner to file a critical report in hope that he will then be appointed as trustee or be asked to prosecute actions recommended in his report.  These concerns are not present here.  The Examiner filed his final report over a year ago.  There are no allegations that the Examiner's reports to this Court were anything but purely objective." Examiner's Supplemental Response, Doc. No. 49, at ¶ 12.

[23] Derivative standing to initiate an avoidance action may be appropriate where "1) a demand has been made upon the statutorily authorized party to take action; 2) the demand is declined; 3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court; and 4) the inaction is an abuse of discretion (*i.e.*, unjustified)...." *G-I Holdings, Inc. v. Those Parties Listed on Exhibit A*, 313 B.R. 612, 628 (Bankr. D.N.J. 2004).  The party seeking derivative standing has the burden to demonstrate that these elements are met.  *Id.* at 629.

cost to the estate, or whether the Trustee unjustifiably refused to bring this action.  Because there is no estate representative for this action who can prosecute it, it will be dismissed.

An appropriate order will be entered.

Counsel for the Trustee shall immediately serve a copy of this Memorandum Opinion and Order on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

DATE:  July 31, 2009

_____
Judith K. Fitzgerald
United States Bankruptcy Judge

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**BANKRUPTCY DIVISION**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| IN RE: | |
| JEFFREY J. PROSSER, | Bankruptcy No. 06-30009 |
| Debtor | Chapter 7 |
| ROBERT F. CRAIG, P.C. | |
| Plaintiff | |
| v. | Adversary No. 08-03051<br>**Related to Doc. No. 25** Motion of Steven A. Felsenthal, Chapter 11 Examiner of the Jeffrey Prosser Bankruptcy Estate, For Authority to Assert Causes of Action on Behalf of the Estate of Jeffrey J. Prosser |
| GREENLIGHT CAPITAL QUALIFIED, L.P., GREENLIGHT CAPITAL, L.P, and GREENLIGHT CAPITAL OFFSHORE, LTD., | |
| Defendants | |

**ORDER**

    **AND NOW**, this  31st  day of    July    , 2009, for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that the Motion of Steven A. Felsenthal, Chapter 11 Examiner of the Jeffrey Prosser Bankruptcy Estate, for Authority to Assert Causes of Action on Behalf of the Estate of Jeffrey J. Prosser is **DENIED**.

    It is **FURTHER ORDERED THAT** the Adversary is dismissed.

1

It is **FURTHER ORDERED THAT** Counsel for the Trustee shall immediately serve a copy of this Memorandum Opinion and Order on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

The Clerk shall close this Adversary.

*Judith K. Fitzgerald*          eev
Judith K. Fitzgerald
United States Bankruptcy Judge