**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**BANKRUPTCY DIVISION**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| _____ ) | | |
| In re: | ) | Case No. 06-30009 |
| | ) | |
| JEFFREY J. PROSSER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____) | | |
| | ) | |
| STAN SPRINGEL, CHAPTER 11 | ) | |
| TRUSTEE OF THE BANKRUPTCY | ) | |
| ESTATES OF INNOVATIVE | ) | |
| COMMUNICATIONS CORPORATION, | ) | |
| EMERGING COMMUNICATIONS, | ) | |
| INC., AND INNOVATIVE | ) | |
| COMMUNICATION COMPANY, LLC; | ) | |
| JAMES P. CARROLL, CHAPTER 7 | ) | |
| TRUSTEE OF THE BANKRUPTCY | ) | Related to Doc. Nos. 1143, 1178, 1236, |
| ESTATE OF JEFFREY J. PROSSER; | ) | 1237, 1338, 1343, 1344, 2225, 2226, 2227, |
| GREENLIGHT CAPITAL QUALIFIED, | ) | 2229, 2230, 2233, 2305, 2309, 2310, 2312, |
| L.P.; GREENLIGHT CAPITAL, L.P.; | ) | 2316, 2350, 2352, 2354 |
| AND GREENLIGHT CAPITAL | ) | |
| OFFSHORE, LTD., | ) | |
| | ) | |
| Movants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY J. PROSSER, | ) | |
| | ) | |
| Respondent. | ) | |
| _____) | | |

1

## MEMORANDUM OPINION

### Introduction

Before the Court are objections filed by James P. Carroll, Chapter 7 Trustee of the Estate

of Jeffrey J. Prosser (the "Chapter 7 Trustee" or "Trustee Carroll"), Stan Springel, Chapter 11

Trustee of the Estates of Innovative Communication Corporation ("New ICC"), Emerging

Communications, Inc. ("EmCom"), and Innovative Communication Company, LLC ("ICC-

LLC" and together with EmCom and New ICC, the "ICC Debtors")[1], and Greenlight Capital

Qualified, L.P., Greenlight Capital, L.P., and Greenlight Capital Offshore, Ltd. (collectively, the

"Greenlight Entities"), to the exemptions claimed by Jeffrey J. Prosser (the "Debtor") pursuant

to § 522[2] of the Bankruptcy Code in the following property:

> (1) real property located at Hermon Hill, Plots 96, 97A, Christiansted, St. Croix, U.S.
> Virgin Islands ("Hermon Hill");
> (2) real property located at Estate Shoys, Plot Numbers 4, 4A, 5, 10A, and 10AA,
> Christiansted, St. Croix, U.S. Virgin Islands (the "Shoys Estate");
> (3) real property known as the Shoys Plot (Anna's Hope Plot) numbers 168, 169, 170,
> and 171, Christianstead, St. Croix, U.S. Virgin Islands ("Anna's Hope").

On October 9, 2009, this Court issued an Opinion (the "Exemptions Opinion") denying

Mr. Prosser's claimed exemptions in the above-referenced real property, along with Mr.

Prosser's claimed exemption in an additional piece of real property located at 252 El Bravo Way,

Palm Beach, Florida (the "Palm Beach Property"), on the grounds that, under the totality of the

---

[1] The ICC Debtors are also debtors in bankruptcy in the U.S. Bankruptcy Court for the
U.S. Virgin Islands, Division of St. Thomas and St. John at Case No. 07-30012 (New ICC), 06-
30007 (EmCom), and 06-30008 (ICC-LLC).  EmCom and ICC-LLC's bankruptcy cases are
jointly administered under Case No. 06-30008.  Liquidation plans have been confirmed in the
ICC Debtors' bankruptcy cases.

[2] All statutory citations are to the Bankruptcy Code, Title 11 of the United States Code,
unless otherwise specified.

circumstances, Mr. Prosser's bad faith conduct throughout his bankruptcy case warranted a

blanket denial of his real property exemptions.  On appeal, Judge Gomez of the United States

District Court for the United States Virgin Islands, Division of St. Thomas and St. John, reversed

and remanded that portion of the Exemptions Opinion that dealt with real estate in the Virgin

Islands, holding that exemptions in real property cannot be denied on the basis of bad faith

conduct that is not directly linked to the real property to be exempted.[3]  We are now charged

with reconsidering the exemptions for the properties listed in the Hermon Hill, Estate Shoys, and

Anna's Hope properties.[4]

**<u>Procedural and Factual Background</u>**

Mr. Prosser listed the real property at issue on his fourth Amended Schedule A - Real

Property as follows[5]:

---

[3] *Prosser v. Springel*, Civil Case No. 3:09-cv-00147-CVG-RM, Doc. No. 39, at 20
(D.V.I. Jan. 6, 2012) (the "District Court Opinion").

[4] As stated in the District Court Opinion, the Palm Beach Property is not subject to
reconsideration.  The Court authorized the Chapter 7 Trustee to sell the Palm Beach Property
while the appeal of the Exemptions Opinion was pending and issued an order confirming the
sale.  Prosser obtained a stay of this Court's order confirming sale from the district court, but the
Chapter 7 Trustee moved in the court of appeals to require Prosser to post a bond to stay the sale.
The court of appeals granted Trustee Carroll's motion, Prosser failed to timely post a bond, and
the stay was lifted.  The Palm Beach Property was then sold to a good faith purchaser on May
16, 2011.  *See* District Court Opinion, at 6.

[5] Jeffrey Prosser's fourth amended schedules, Case No. 06-30009, Doc. No. 1226, filed
on January 11, 2008 (the "Fourth Amendment").  The Debtor did not list his possessory interest
in the Shoys Estate until the first amendment of his schedules filed on February 5, 2007, at Doc.
No. 359.  We note that Mr. Prosser amended his schedules a fifth time, on May 7, 2009 (the
"Fifth Amendment," Doc. No. 2468) after the close of evidence on the exemptions trial.  The
Fifth Amendment does not have any effect on Mr. Prosser's claimed exemptions.  As such, all
citations to Mr. Prosser's schedules will be to the Fourth Amendment at Doc. No. 1226.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSB/WIFE JOINT COM. | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| Shoys Plot #'s 168, 169, 170, and 171 St. Croix, USVI | Fee Simple | T by E | $100,000.00 each $400,000.00 total | None |
| Hermon Hill Plot 96 and 97A Christiansted, St. Croix | Fee Simple | T by E | $50,000.00 | None |
| 4, 4A, 5, 10A and 10AA Estate Shoys St. Croix, USVI | Possessory Interest | n/a | Undetermined | $2,070,000 (approximately) |

Mr. Prosser's fourth Amended Schedule C - Property Claimed Exempt, lists his claimed

exemptions in the real property at issue as follows:

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| Shoys Plot (Anna's Hope Plot) Numbers 168, 169, 170, and 171 Christiansted, St. Croix, U.S.V.I. | 11 U.S.C. §522(b)(3)(B) | Unlimited | $100,000.00 each $400,000.00 total |
| Hermon Hill, Plots 96, 97A Christiansted, St. Croix, U.S.V.I. | 11 U.S.C. §522(b)(3)(B) | Unlimited | $50,000.00 |

4

| Estate Shoys Plot Numbers 4, 4A, 5, 10A, 10AA Christiansted, St. Croix, U.S.V.I. | V.I.C.A. 5 §478(a) | $30,000.00 | $2,070,000.00 |
|---|---|---|---|

The Chapter 7 Trustee, the Chapter 11 Trustee, and the Greenlight Entities each filed objections to the exemptions claimed by Mr. Prosser.[6]  The objections to the claimed real property exemptions were tried on June 9-12, 2008, August 25-28, 2008, September 8-9, 2008, and October 2-3, 2008.[7]  After the close of evidence, the parties submitted the following proposed findings of fact and conclusions of law and post-trial briefs:

- Jeffrey J. Prosser's Proposed Findings of Fact and Conclusions of Law and Brief, Doc. No. 2225, filed Nov. 14, 2008;
- Trustee Springel's Proposed Findings of Fact and Conclusions of Law, Doc. No. 2226, filed Nov. 14, 2008;
- Trustee Springel's Brief in Support of Proposed Findings of Fact and Conclusions of Law, Doc. No. 2227, filed Nov. 14, 2008;
- Trustee Carroll's Proposed Findings of Fact and Conclusions of Law, Doc. No. 2229, filed Nov. 14, 2008;
- Trustee Carroll's Post-Trial Brief Regarding Exemptions Claimed by Debtor, Doc. No. 2230, filed Nov. 14, 2008;
- Joinder of the Greenlight Entities in Chapter 7 Trustee's (A) Proposed Findings of Fact and Conclusions of Law and (B) Post Trial Brief With Respect to the Exemptions Proceedings, Doc. No. 2233, filed Nov. 14, 2008.

Closing arguments were held on December 1, 2008.  Thereafter, the parties filed the following post-argument briefs:

- Jeffrey J. Prosser's Supplementary Trial Brief on Objection to Exemptions, Doc. No.

---

[6] Doc. Nos. 1143, 1178, 1236, 1237, 1338, 1343, 1344.

[7] Objections to Mr. Prosser's claimed exemptions in various personal property and a real property located in Lake Placid, NY (the "Lake Placid Property"), not at issue here, were adjudicated after a non-evidentiary hearing on certain of the grounds for objection on February 28, 2008.  An Order ruling on the claimed exemptions in personal property was issued by this Court on March 20, 2008, at Doc. No. 1458 (the "First Exemptions Order").

2305, filed Jan. 15, 2009;
- Chapter 11 Trustee's Objection to Jeff Prosser's Proposed Findings of Fact and
Conclusions of Law, Doc. No. 2309, filed Jan. 15, 2009;
- Chapter 7 Trustee's Supplemental Post-Trial Brief Regarding Exemptions Claimed by
the Debtor, Doc. No. 2312, filed Jan. 15, 2009;
- Joinder of the Greenlight Entities in (A) Chapter 11 Trustee's Supplemental Post-Trial
Brief (Exemptions Contested Matter) and (B) Chapter 7 Trustee's Supplemental Post
Closing Brief Regarding Exemptions Claimed by the Debtor, Doc. No. 2316, filed Jan.
15, 2009;
- Jeffrey J. Prosser's Reply Trial Brief on Objections to Exemptions, Doc. No. 2350, filed
Jan. 26, 2009;
- Chapter 11 Trustee's Response to Jeff Prosser's Supplementary Trial Brief on
Objections to Exemptions, Doc. No. 2352, filed Jan. 26, 2009;
- Chapter 7 Trustee's Reply Brief to Jeffrey J. Prosser's Supplementary Trial Brief on
Objections to Exemptions, Doc. No. 2354, filed Jan. 26, 2009.

As we stated in the Exemptions Opinion, we did not address the specific objections to the

real property at issue in the Exemptions Trial because, in this Court's view, Mr. Prosser's bad

faith conduct throughout his bankruptcy case warranted a sweeping denial of all of his claimed

real property exemptions.  We will now examine the specific objections to the exemptions

claimed in the Hermon Hill, Anna's Hope, and Estate Shoys.[8]

**<u>HERMON HILL</u>**

Mr. Prosser claims an unlimited exemption in Hermon Hill under § 522(b)(3)(B), which

provides that an individual debtor may exempt from property of the estate:

---

[8] On November 7, 2012, the Chapter 7 Trustee filed a Motion to Reopen the Exemptions
Record [Case No. 06-30009, Doc. No. 3974], seeking to introduce this Court's Memorandum
Opinion regarding turnover of assets under § 542 (the "Turnover Opinion") [Adv. No. 07-3010,
Doc. No. 728], the verdict [Civil Case No. 08-147, Doc. No. 74] and judgment [Civil Case No.
08-147, Doc. No. 85] in the Chapter 7 Trustee's fraudulent conveyance action against Dawn
Prosser in the U.S. District Court for the U.S. Virgin Islands, and various invoices relating to
payments made by New ICC to vendors who provided goods and services to the Shoys Estate.
This motion will be denied by separate Order.  However, the Court will take judicial notice of
the Turnover Opinion and the fraudulent conveyance verdict and judgment in the U.S. District
Court.

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law;

§ 522(b)(3)(B).

Here, the "applicable nonbankruptcy law" contemplated by § 522(b)(3)(B) is clearly that of the U.S. Virgin Islands, as that is not only where the property is located but also the place claimed by the Debtor as his domicile.  The U.S. Virgin Islands recognizes tenancies by the entirety in real property.  *See* 28 V.I.C. § 7(c) ("a conveyance or devise of real property to husband and wife jointly creates an estate by the entirety unless otherwise provided in the deed").  Furthermore, under the law of the U.S. Virgin Islands, real property owned as tenants by the entirety by a husband and a wife is not subject to execution by a creditor of only one spouse.  *Modeste v. Benjamin*, 1981 U.S. Dist. LEXIS 9353, *3-4 (D.V.I. 1981).  Mr. Prosser argues that he owns Hermon Hill with his wife, Dawn Prosser, as tenants by the entirety,[9] and therefore the property is exempt under § 522(b)(3)(B).

The objecting parties argue that the Prossers do not own Hermon Hill as tenants by the entirety but, rather, as joint tenants by virtue of the fact that the Prossers acquired Hermon Hill before they were married.  The courts of the U.S. Virgin Islands have not ruled on whether real property owned as joint tenants is subject to execution by a creditor of only one tenant, but the objecting parties submit that it is, which would make the Debtor unable to exempt his interest in Hermon Hill under § 522(b)(3)(B).  Alternatively, the objecting parties argue that even if Hermon Hill is owned by the Prossers as tenants by the entirety, the Prossers have joint creditors

---

[9] *See Jeffrey J. Prosser's Response to Greenlight's Objection to Debtor's Claimed Exemptions*, Case No. 06-30009, Doc. No. 1239, at 10.

which fact makes the property subject to execution, and thus Hermon Hill cannot be exempted under § 522(b)(3)(B).

The first step in the analysis is determining whether Hermon Hill is owned by the Prossers as tenants by the entirety or as a joint tenancy.  When a married couple owns property as tenants by the entirety, they are "deemed by the common law to take the whole estate as a single person with the right of survivorship so that if one dies the entire estate belongs to the other by virtue of the title originally invested."  *Masonry Prods. v. Tees*, 280 F. Supp. 654, (D.V.I. 1968).  Under the law of the U.S. Virgin Islands, a "conveyance or devise of real property to husband and wife jointly creates an estate by the entirety unless otherwise provided in the deed or will."  28 V.I.C. § 7(c).

The Prossers were married on August 14, 1990.  Trial Test. of Jeffrey J. Prosser, June 11, 2008, 225:10-12; Trial Ex. TE-95 (Depo. Test. of Dawn Prosser, July 21, 2008, 30:25-31:2).  According to Dawn Prosser's testimony, Hermon Hill was acquired by the Prossers before they were married.  Trial Ex. TE-95, 31:23-32:6).  The Debtor does not dispute the fact that he acquired Hermon Hill jointly with his wife prior to their marriage, but contends that their subsequent marriage automatically transformed the joint tenancy ownership in Hermon Hill to a tenancy by the entirety.  There have been no rulings on this issue in the courts of the Virgin Islands.  However, the statute is clear that an estate by the entirety is created upon a "conveyance or devise of real property *to husband and wife jointly*."  28 V.I.C. § 7(c) (emphasis added).  Nothing in the statute contemplates the transformation of jointly held property into entireties property by virtue of a subsequent marriage.  Because the Prossers were not married at the time of conveyance, the conveyance was not "to a husband and wife jointly," and a tenancy by the

entirety was not created.  Having not been created at the time of conveyance, and in accord with

the law of other jurisdictions that recognize a tenancy by the entirety as a form of property

ownership, a tenancy by the entirety cannot subsequently arise by virtue of the marriage of the

property owners.[10]  The rationale for this proposition is based on the notion that under the

common law, a tenancy by the entirety can only arise if, at the time of conveyance, the five

unities of time, possession, title, interest, and marriage are present.  *In re Sampath*, 314 B.R. 73,

82 (Bankr. E.D. Va. 2004).

Next, the Court must determine whether a joint tenancy is exempt from process by a

creditor of one property owner under the law of the Virgin Islands.  While there is no local case

law analyzing this issue, the general view as to property held in joint tenancy is that it is

generally not exempt from process by creditors, even if the debt is owed only by one property

owner.[11]  As a result, the objecting parties' objection with respect to Hermon Hill is sustained;

the Debtor cannot exempt his interest in Hermon Hill under § 522(b)(3)(B).  Because the Debtor

_____

[10] *See Schwartz v. United States*, 191 F.2d 618, 621 (4th Cir. 1951) ("It is well settled, of
course, that the marriage of persons holding an estate as joint tenants or tenants in common does
not convert such an estate into one by the entireties."); *Herron v. Singh* (*In re Ramsurat*), 361
B.R. 246, 256 (Bankr. M.D. Fla. 2006) ("Moreover, a subsequent marriage of the grantees of real
property does not convert retroactively their ownership into a tenancy by the entireties."); *Novak
v. Novak*, 516 N.Y.S. 2d. 878, 878 (N.Y. Gen. Term 1987) ("The marriage of the parties did not
convert the joint tenancy into a tenancy by the entirety, which could be created only by a
conveyance to a husband and wife."); *Stavish v. Stavish*, 1980 Pa. Dist. & Cnty. Dec. LEXIS
452, *2 (Pa. Com. Pleas Ct. 1980) ("[T]he subsequent marriage of joint owners of property does
not automatically convert their ownership to a tenancy by the entireties."); 41 C.J.S. Husband
and Wife § 23 (Lawrence J. Culligan & Milorad Nikolic Eds., 1991).

[11] *See* Spero, Asset Protection: Legal Planning, Strategies and Forms, ¶ 13.11 Jointly
Held Interests, *11 ("Joint Tenancy property is generally not exempt under local law."); *see, e.g.,
In re Fisher*, 27 B.R. 71, 72 (Bankr. M.D. Pa. 1983) (applying Pennsylvania law); *In re Caliri*,
347 B.R. 788, 799 (Bankr. M.D. Fla. 2006) (applying Florida law); *In re Antonie*, 447 B.R. 610,
613 (D. Idaho 2011) (applying Idaho law).

cannot exempt his interest in Hermon Hill as a matter of law under § 522(b)(3)(B), the Court

need not examine any of the objecting parties' allegations of bad faith conduct with respect to

this particular property.

## ANNA'S HOPE

As with Hermon Hill, Mr. Prosser claims an unlimited exemption in Anna's Hope

pursuant to § 522(b)(3)(B) on the ground that he jointly owns Anna's Hope with his wife as

tenants by the entirety.  Unlike Hermon Hill, the Prossers unquestionably acquired Anna's Hope

subsequent to their marriage and own the property as tenants the entirety.  This fact is not

disputed by the objecting parties, but rather, the objecting parties argue that the Prossers have

joint debts which destroy the Debtor's entireties exemption under § 522(b)(3)(B).

As noted above, in the Virgin Islands, real property owned as tenants by the entirety by a

husband and a wife is not subject to execution by a creditor of only one spouse.  *Modeste v.

Benjamin*, 1981 U.S. Dist. LEXIS 9353, *3-4 (D.V.I. 1981).  Thus, under "applicable

nonbankruptcy law" this property is exempt from process except as to joint creditors.

Accordingly, pursuant to § 522(b)(3)(B), Anna's Hope can be exempted entirely from the estate

unless joint creditors exist to defeat the exemption.

However, the presence of joint creditors alone is not enough to completely eliminate a

debtor's entireties exemptions.  "A debtor does not lose all benefit of [§ 522(b)(3)(B)] when joint

creditors are present, but he does not benefit from it to the extent of joint claims."  *Sumy v.

Schlossberg*, 777 F.2d 921, 928 (4th Cir. 1985).  "Where joint creditors exist, a debtor's equity in

entireties property above the amount of the joint obligations qualifies for the Section

522(b)(2)(B) exemption.  *In re McRae*, 308 B.R. 572, 575 (N.D. Fla. 2003) (citing *Havaco of

*America, Ltd. v. Hill*, 197 F.3d 1135, 1139 (11th Cir. 1999). *See also Napotnik v. Equitable and Parkvale Sav. Ass'n*, 679 F.2d 316, 320 (3d Cir. 1982) (holding that the debtor's interest in entireties property was not exempt under § 522(b)(2)(B) [now § 522(b)(3)(B)] to the extent the property was subject to a judgment against both spouses on a joint debt, but holding that any equity beyond the judgment does qualify for exemption under the statute); *In re Raynard*, 327 B.R. 623, 629 (Bankr. W.D. Mich. 2005) ("The debtor's allowed exemption is the value of the equity in the undivided interest minus whatever debts are owed by the debtor jointly with his spouse."). Therefore, whether the Debtor can exempt his entireties interest in Anna's Hope depends upon whether his total exemption interest in entireties property exceeds the total joint debt he held with his wife. The critical time for making this determination is "immediately before the commencement of the case." § 522(b)(3)(B); *In re Oberlies*, 94 B.R. 916, 918 (Bankr. E.D. Mich. 1988) ("[T]he extent of the entireties exemption is reduced by the amount of the joint debts outstanding when this case began.").

At the time of filing, Jeffrey Prosser and Dawn Prosser were jointly indebted to Bank of America by virtue of a mortgage on the Prossers' Palm Beach Property (the "Bank of America Mortgage"), which the Debtor alleged to total $5 million. Both Jeffrey and Dawn's signatures are on the mortgage document executed with Bank of America on July 29, 2005. Trial Ex. TE-45 (Mortgage between Jeffrey and Dawn Prosser and Bank of America, dated July 29, 2005).[12]

---

[12] The Prossers' debt to Bank of America was satisfied post-petition, when the Palm Beach Property was sold by Trustee Carroll pursuant to our Memorandum Opinion in Support of Interim Order Setting Alternative Closing Dates Depending Upon Terms of Final Order to be Entered Confirming Sale (the "Palm Beach Opinion")[Adv. No. 11-3001, Doc. No. 46], and the Order Confirming Sale [Adv. No. 11-3001, Doc. No. 65]. Bank of America consented to a distribution of $5,275,000 in full satisfaction of the Prossers' debt on the mortgage. Palm Beach Opinion, at 4.

11

Furthermore, on his schedules, the Debtor listed two other joint debts he held with his wife.  One

is to "FirstBank, St. Thomas, USVI," in the amount of $1,470,000 (the "FirstBank Mortgage").

Trial Ex. TE-2 (Debtor's Original Schedule F).  The Debtor's notation on the schedule reads

"Co-signer of Note on Wife's House - 2004."  *Id.*  There is also a joint debt to "PHH Mortgage,

P.O. Box 371458, Pittsburgh, PA 15250" in the amount of approximately $600,000 (the "Merrill

Lynch Mortgage").  *Id.*  The notation reads "Co-Signer of Note on Wife's House - 1989."  *Id.*

Neither of these debts is listed as contingent or disputed.  *Id.*  Both the Firstbank Mortgage and

the Merrill Lynch Mortgage are secured by the Shoys Estate.  In total, based on the Debtor's

bankruptcy schedules, the Debtor held $7,070,000 of joint debt with his wife.

Next, the Court must determine the total amount of the Debtor's exemption interest in

entireties property existing on the date of filing.  If any such amount exceeds the $7 million in

joint debt, that portion shall qualify for exemption under § 522(b)(3)(B).  The Debtor listed his

ownership in the Palm Beach Property as a tenancy by the entirety, and reported its value at

$8,717,808.  Trial Ex. TE-6.  The objecting parties have not disputed the value of the Palm

Beach Property at the time of filing as reported by the Debtor.  If the Court accepts the Debtor's

representation in his schedules, the result is that the value of the Palm Beach Property alone

exceeds the Prossers' joint debt by $1,647,808.  In addition, by adding the debtor's equity in

Anna's Hope, which is valued by the Debtor at $400,000 for all four combined plots and is not

subject to any liens, to the $1,647,808 referenced above, the Debtor's exemption interest in

entireties property further exceeds the total of the joint debts.  Thus, because Anna's Hope is

held by the Prossers as tenants by the entirety and because the total amount of the joint debts is

less than the total value of the Debtor's exemption interest in entireties property, there is

insufficient evidence to establish that the joint creditors could reach the equity in Anna's Hope. The Court will overrule the objection with respect to that property. The Debtor may exempt his entireties interest in Anna's Hope under § 522(b)(3)(B).

The objecting parties argue alternatively that even if the Debtor can exempt his interest in Anna's Hope under § 522(b)(3)(B), such exemption must be capped at $125,000 pursuant to § 522(q), because the Debtor owes a debt arising from "fraud, deceit, or manipulation in a fiduciary capacity."  § 522(q)(1)(B)(ii).  The Debtor argues that § 522(q) does not apply to property claimed as exempt under § 522(b)(3)(B), but rather, it applies only to limit exemptions claimed under § 522(b)(3)(A).

Section 522(q) provides:

> (q)(1) As a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of an interest in property described in subparagraphs (A), (B), (C), and (D) of subsection (p)(1) which exceeds in the aggregate $146,450[13] if–
> ***
> (B) the debtor owes a debt arising from–
> ***
> (ii) fraud, deceit, or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security registered under Section 12 or 15(d) of the Securities Exchange Act of 1934 or under section 6 of the Securities Act of 1933.

§ 522(q)(1)(B)(ii).  Section 522(p)(1) provides:

> (p)(1) Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $146,450[14] in value in –

---

[13] The monetary limit in § 522(q) is adjusted periodically.  Because the Debtor's bankruptcy filing preceded April 1, 2007, the applicable limit in this instance is $125,000.

[14] *See* note 10.

13

> (A) real or personal property that the debtor or a dependant of the debtor uses as a
> residence;
> (B) a cooperative that owns property that the debtor or a dependent of the debtor
> uses as a residence;
> (C) a burial plot for the debtor or a dependent of the debtor; or
> (D) real or personal property that the debtor or dependent of the debtor claims as

a

> homestead.

§ 522(p)(1).  In this Court's view, § 522(p) and (q) work together to limit a debtor's homestead

exemption under § 522(b)(3)(A), either because the debtor owes a debt arising from "fraud,

deceit, or manipulation in a fiduciary capacity," or because the debtor acquired the homestead

interest "during the 1215-day period preceding the date of the filing of the petition."  We agree

with the Debtor that these sections have no application to exemptions claimed under §

522(b)(3)(B).

The objecting parties read § 522(q) to provide that once *anything* is claimed exempt

under § 522(b)(3)(A), then that claimed exemption serves as a trigger to apply § 522(q) to any

property enumerated in § 522(p)(1), regardless of whether such property is claimed exempt

under § 522(b)(3)(A) or (B).  *See* Chapter 11 Trustee's Supplemental Post-Trial Brief

(Exemptions Contested Matter), Doc. No. 2310, at 5.  The objecting parties argue that if § 522(q)

were not meant to apply beyond property claimed exempt under § 522(b)(3)(A), it would have

been drafted in a fashion similar to § 522(o) which uses the phrase, "[f]or purposes of subsection

(b)(3)(A)" rather than "[a]s a result of electing under subsection (b)(3)(A)."  One case cited by

the Debtor, *In re Hinton*, 378 B.R. 371 (Bankr. M.D. Fla. 2007), has held that § 522(o) does not

apply to exemptions claimed under § 522(b)(3)(B).[15]  The objecting parties distinguish that case

---

[15] We note that § 522(o) was added to the Bankruptcy Code at the same time as § 522(p)
and (q), as part of the 2005 BAPCPA amendments.

14

because of this difference in phrasing.

In *In re Buonopane*, 359 B.R. 346, 347 (Bankr. M.D. Fla. 2007), the court considered whether § 522(p)–which, unlike § 522(o), contains the identical "as a result of electing under subsection (b)(3)(A)" language found in § 522(q)–applies to property claimed as exempt under § 522(b)(3)(B).  The court held that it does not.  *Id.*  The court explained that:

> [T]he applicability of section 522(p)(1) is predicated on the debtor having elected '... under subsection (b)(3)(A) to exempt property under State law....' 11 U.S.C. § 522(p)(1). However, the exemption of TBE property is permitted under subsection (b)(3)(B), not subsection (b)(3)(A).  While this may appear to provide a way for a debtor to 'end run' the $125,000 cap contained in section 522(p), it is consistent with the legislative history of 522(p) which describes that the reason for enacting the $125,000 cap was to close the 'mansion loophole' existing in states such as Florida.  H.R.Rep. No. 109-31, pt. 1 (2005), at 15-16, U.S. Code Cong. & Admin. News 2005, ¶. 88, 101-02.  As Discussed in the House Report, debtors living in certain states with favorable homestead laws can shield from their creditors all of the equity in their homes.  In light of this, some debtors relocate to these states just to take advantage of their 'mansion loophole' laws. Id. The Act closes this perceived 'loophole' by amending section 522 to add section 522(p) which, under certain circumstances, limits debtors' rights to avail themselves of favorable state homestead laws.  There is nothing in the legislative history which in any way indicates that these new limitations were directed to Florida's common law on tenancy by the entirety property.

*Id.* at 347-48.

We agree with the analysis set forth in *In re Buonopane*, and find that § 522(q) applies only to property claimed exempt under § 522(b)(3)(A), not to property claimed as exempt as entireties property under § 522(b)(3)(B).  As observed by the court in *In re Schwartz*, 362 B.R. 532, 534 n.2 (Bankr. S.D. Fla 2007), "despite its complex tinkering with homestead exemption provisions in BAPCPA, including changes to § 522(b)(3)(A) and new §§ 522(o), 522(p), and 522(q), Congress determined to leave wholly intact the preexisting blanket exemption available to debtors who own property in a tenancy by the entireties form if applicable nonbankruptcy law would exempt that property from process."  Because we find that § 522(q) has no applicability to

15

property claimed exempt under § 522(b)(3)(B), we need not determine whether the Debtor owes

a debt arising from "fraud, deceit, or manipulation in a fiduciary capacity."  § 522(q)(1)(B)(2).

In conclusion, the Court finds that the Debtor may exempt his entireties interest in

Anna's Hope under § 522(b)(3)(B) and that the exemption is not limited by § 522(q) as that

section applies only to exemptions claimed under § 522(b)(3)(A).  The objection to exemptions

as to Anna's Hope is overruled.

## SHOYS ESTATE

Pursuant to § 522(b)(3)(A), the Debtor claims an exemption in the Shoys Estate under the

Virgin Islands homestead exemption statute, 5 V.I.C. § 478, which provides that:

> (a) The homestead of any family, or the proceeds thereof, shall be exempt from judicial
> sale for the satisfaction of any liability hereafter contracted or for the satisfaction of any
> judgment hereafter obtained on such debt.  Such homestead must be the actual abode of
> and owned by such family or some members thereof.  It shall not exceed thirty thousand
> dollars in value, nor exceed five acres in extent if not located in a town laid off into
> blocks or lots, or if located in any such town, then it shall not exceed one-fourth of one
> acre.

5 V.I.C. § 478(a).

Certain objecting parties have questioned whether the Shoys Estate is the "actual abode"

of the debtor.  There is no question that the Prossers lived in the Guest House located on the

Shoys Estate at the time the case was filed, and that title to Shoys Estate was in Dawn Prosser's

name.  Accordingly, the Court finds that the Shoys Estate constitutes an "actual abode . . . owned

by such family or some members thereof."  5 V.I.C. § 478(a).

The Chapter 11 Trustee also argues that because the Prossers lived in the guest house,

and because the mansion that sits on the Shoys Estate is unfinished and uninhabitable, only the

guest house should be considered his "actual abode" and therefore his homestead exemption

16

should be limited to the guest house.  This argument has no merit.  As an initial matter,

throughout this bankruptcy case, the parties have treated the five plots that constitute the Shoys

Estate as one contiguous piece of property.  Secondly, in *Petrohan v. Petrohan*, 2007 WL

790541 (Sup. Ct. V.I. March 1, 2007), the Superior Court of the Virgin Islands noted that 33

V.I.C. § 2305, which governs the homestead exemption for purposes of determining property

taxes, defines "homestead" as "the abode *including land and buildings*, owned by, and actually

occupied by, the property owner, or by members occupied by, a person, or by members of the

property owner's family free of rental charges."  *Id.* at *3 (quoting 33 V.I.C. § 2305) (emphasis

added).  Furthermore, the court rejected an argument that the residence at issue could not qualify

as a marital homestead because construction of the dwelling was not completed.  The court held

that "[m]any people construct additions while remaining in the residence or move into homes

that are incomplete.  This does not deprive them of their right to claim marital homestead status."

*Id.* at *4.  The court explained that 33 V.I.C. § 2305 did not contain a "habitability" requirement.

*Id.* at *4.  Similarly, in this case, 5 V.I.C. § 478(a) likewise does not contain a "habitability"

requirement.

    The Court finds the Shoys Estate to be the actual abode of the Prossers.  Although the

Prossers were constructing a larger home on their property that was unfinished at the time of

filing, the fact remains that, on the petition date, the Prossers lived on the Shoys Estate, in the

guest house, which Debtor claimed as his primary residence.

    The Chapter 11 Trustee advances another argument that the Debtor's $30,000 exemption

should be reduced to $0 by virtue of § 522(o), which provides that:

    (o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of
    an interest in–

17

(1) real or personal property that the debtor or a dependent of the debtor uses as a residence;

. . .; or

(4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;

shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year-period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

§ 522(o). This subsection was added to the bankruptcy code in 2005 with the BAPCPA amendments to prevent abuses of state homestead exemptions, i.e., fraudulently converting nonexempt assets into value in exempt homesteads within 10 years of a bankruptcy filing. *See In re Lyons*, 355 B.R. 387 (Bankr. D. Mass. 2006). However, this section cannot apply in this instance to reduce the Debtor's $30,000 exemption in the Shoys Estate. For purposes of the Shoys Estate, § 522(o) mandates that the value of the Debtor's interest in that property be reduced to the extent that such value is ***attributable*** to non-exempt assets fraudulently disposed of within ten years of the petition date, which is July 31, 1997. In 1990, Dawn Prosser (then Dawn LaBennett) acquired plots 5 and 10A of the Shoys Estate, before she married the Debtor. Thus, upon his marriage to Dawn on August 14, 1990, when he and Dawn became family members and made their residence in the house (now demolished) that sat on plots 5 and 10A of the Shoys Estate,[16] the Debtor became entitled to the homestead exemption provided for in 5 V.I.C. § 478. The value of those plots at the time of acquisition was approximately $900,000. Trial Ex. TE-9 (Examiner's Final Report, dated November 20, 2007). Thus, it cannot be said that any portion of the Debtor's $30,000 exemption interest, which he has held since August 14,

---

[16] *See* Trial Ex. TE-9 (Final Examiner's Report, dated November 20, 2007).

18

1990, in property which was worth $900,000 at that time, could be attributable to conversion of nonexempt assets between July 31, 1997, and July 31, 2007.  Accordingly, we overrule the objection based on § 522(o).

Next, the objecting parties argue that to the extent the Debtor is able to exempt his possessory interest in the Shoys Estate, such interest shall be subject to the $125,000 aggregate cap provided for in § 522(q), by virtue of the fact that the Debtor owes a debt arising from "fraud, deceit, or manipulation in a fiduciary capacity."  § 522(q)(1)(B)(ii).  As we discussed above with respect to Anna's Hope, § 522(q) applies only to limit property interests of the kind described in subparagraphs (A)-(D) of subsection § 522(p)(1) if such interests are claimed exempt under § 522(b)(3)(A).  Although the exemption in question is claimed pursuant to § 522(b)(3)(A), Debtor's exemption in the Shoys Estate is capped at $30,000 by 5 V.I.C. § 478(a), an amount well below the $125,000 aggregate limit imposed by § 522(q).

Under a pure statutory analysis under § 522(b)(3)(A), the Debtor could exempt his $30,000 possessory interest in the Shoys Estate pursuant to 5 V.I.C. § 478(a).  However, in this instance, Debtor's bad faith conduct is directly linked to the Shoys Estate.  For the reasons that follow, the Court will deny this $30,000 exemption based on grounds that the Debtor has acted in bad faith.  In determining our initial Exemptions Opinion, Judge Gomez agreed that "it is beyond peradventure that a bankruptcy court has discretion to deny exemptions proposed in bad faith."[17]  However, Judge Gomez cautioned that the bad acts committed by a debtor must generally be directly related to the debtor's claimed exemptions in order to justify disallowing

---

[17] *In re Prosser*, Civ. Case No. 3:09-cv-00147, Doc. No. 39, at 19 (citing *In re Baeur*, 298 B.R. 353, 356 (B.A.P. 8th Cir. 2003)).

19

the objection on the grounds of bad faith.[18]  The Court finds that the Debtor committed the

following bad acts which relate directly to the Debtor's claimed exemption in the Shoys Estate.

First, the Debtor attempted to conceal his true interest in the Shoys Estate by

mischaracterizing his interest on his bankruptcy schedules.  Though representing at all times to

the bankruptcy court that he merely holds a "possessory interest" in the Shoys Estate, the

evidence established that, outside of bankruptcy, the Debtor has taken the position on several

occasions that he is the owner of the Shoys Estate.  In his personal financial statement dated May

1, 2002, to Bank of America N.A., Jeffrey Prosser listed both the main house and the guest house

on the Shoys Estate as his own assets "free of any interest or claim of interest thereto of any

other person . . . ."  Turnover Opinion, at 54.  The Debtor signed that financial statement,

certifying that the information provided was true and accurate in all material respects.  *Id.*  The

Debtor made similar representations in a balance sheet, dated December 31, 2002, which he

provided to Valentino McBean, the Senior Officer for Banco Popular in the U.S. Virgin Islands,

a bank from which the Debtor sought loans.  *Id.*  In addition, as previously discussed, the Debtor

was jointly indebted with his wife on two mortgages on the Shoys Estate, and Mr. Prosser's

testimony was that he was making the monthly mortgage payments for both of those mortgages.

*Id.* at 55. Moreover, Dawn Prosser's balance sheet dated June 30, 2006, lists her ownership

interest in the Shoys Estate as "50%."  *Id.* at 56.  This balance sheet was created after the

Prossers signed the Prossers' Marital Property Agreement[19], which purported to define the Shoys

---

[18] *Id.* at 19-20.

[19] The existence of the Marital Property Agreement was denied by Mr. Prosser until it
was discovered in a storage unit in West Palm Beach, Florida utilized by the Prossers, the
existence of which was itself, undisclosed by the Debtor.  Trial Test. of Jeffrey J. Prosser, TR

Estate as Dawn Prosser's separate property. *Id.* The June 30, 2006, balance sheet is further evidence that the Prossers always had, and intended to have, an equal ownership interest in the Shoys Estate. As a result, we found that, despite claiming merely a "possessory interest" in the Shoys Estate in his bankruptcy schedules, the Debtor held a 50% equitable interest in the Shoys Estate. *Id.*

Secondly, in the U.S. District Court for the United States Virgin Islands in June 2011, a jury found that the Debtor fraudulently transferred to Dawn Prosser her interest in improvements to the Shoys Estate in the two years prior to the date of filing, totaling $8,341,841.20. *See Springel v. Prosser*, Civil Case No. 08-147, Doc. No. 74 (D.V.I. June 10, 2011). The jury also found that the Debtor made substantial unauthorized post-petition transfers to Dawn Prosser in the amount of $2,934,487.82, also in the form of improvements to the Shoys Estate. *Id.*

Mr. Prosser's mischaracterization of his interest in the Shoys Estate as merely "possessory" was done in bad faith and for purposes of preventing the inclusion of a multi-million dollar asset in his bankruptcy estate. Furthermore, despite denying an ownership interest in the Shoys Estate, a jury found that Mr. Prosser fraudulently conveyed the funds to his wife with which to make improvements to the property.[20] The Debtor's bad faith conduct relates directly to the claimed exemption in the Shoys Estate under 5 V.I.C. § 478(a) and warrants denying the $30,000 exemption.

---

8/25/08 at 145:15-146:21, Doc. No. 2096; Trial Ex. TE-90 (Marital Property Agreement); Trial Test. of James P. Carroll, TR 8/27/08 at 106:11-22, Doc. No. 2096.

[20] We note that "improvements" necessarily includes construction of an entirely new residence, the original house having been demolished.

Appropriate orders will be entered consistent with this Opinion.


Judge Judith K. Fitzgerald      **fjg**
United States Bankruptcy Court